THE STATE v. DOUGLASS, *Appellant.*

1. **Witness:** CONVICTION OF. The conviction of a witness cannot be proved by parol where defendant objects, but the record of such conviction must be produced.

2. ————: WHEN EXCLUDED. It is not error to refuse to allow witnesses to testify in a criminal cause, where it does not appear that they know anything of the matter in controversy, and when counsel, upon

opportunity being offered by the court, refuses to make any statement showing the relevancy of the testimony offered.

3. **Practice, Criminal**: CROSS-EXAMINATION. It is error to cross-examine a defendant, testifying in his own behalf in a criminal cause, as to matters not testified upon in his examination in chief.

The cross-examination in this cause held, in no material particular to extend beyond the examination in chief.

4. **Case Adjudged.** The evidence in this cause held to preponderate in favor of a verdict of guilty of murder in the first degree.

5. **Criminal Law**: MANSLAUGHTER IN FOURTH DEGREE. Where a defendant, on trial for murder, testified that the deceased, after a quarrel, knocked her down and threw himself upon her, falling upon a knife in her hand, whereby he was unintentionally killed, an instruction should be given for manslaughter in the fourth degree, under the provisions of Revised Statutes 1879, § 1249.

6. ———:———. Where there is evidence to the effect that a killing was intentionally done, in the heat of passion caused by a blow, an instruction should be given for manslaughter in the fourth degree, under the provisions of Revised Statutes 1879, § 1250.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

The testimony of the State's witnesses who saw the killing was, substantially, that deceased, Miller, and several women, all of them negroes, and among them defendant, were drinking at the saloon of one Flynn, on Seventh and Wash streets, in St. Louis, in the afternoon of the 15th of July, 1882. After they had drunk, the deceased and one of the women went up the alley to the latter's room, and after remaining a short time, came back to the saloon. When the defendant saw them coming back, she said they had been having illicit intercourse, and that she would kill the deceased before night. She went away and procured a knife, and returned to the bar-room and called the deceased out. They had some talk, and deceased gently laid his hand upon her jaw, and told her to go home before she was arrested, and that he would come directly. She suddenly stabbed him with the knife—an ordinary pocket knife—the wound penetrating the aorta, and causing death

in a short time from internal hemorrhage. There was, also, evidence to the effect that the defendant and the deceased were living together in concubinage.

The defendant was arrested in a few minutes after the stabbing, and on her way to the station attempted to drop the knife in a window. The knife was closed, and had fresh blood upon the blade.

The defendant testified on her own behalf, to the effect that she and deceased had been living together, and that he had been away on the river for three weeks immediately preceding the homicide. That she had given him $20 of her money to keep for her, and on the day of the homicide went to the saloon spoken of by the witnesses, and asked deceased for money for her child. He told her to come back, and he would get it from the person to whom he had given it. When she came back, one of the women present said deceased had given her $15 some time before with which to buy a new dress. Defendant remonstrated with deceased for spending her money on other women, when he threatened to strike her. Something was said about police coming, and defendant turned her head to look, when deceased knocked her down and got on her stomach with his knees, said he would kill her and cut her on the neck with his knife, which he had out at the time. She pushed him off, and in some unintentional manner stabbed him. She did not know at the time that she had cut him, or that she was cut. There was no quarrel until she asked him for money. She was corroborated by one witness as to being knocked down by deceased, and contradicted by all the other eye-witnesses. The policemen who arrested her, said no cut was visible on her neck or elsewhere.

*Simon S. Bass* for appellant.

The court erred in defining the term "deliberately" to mean in a cool state of the blood, not in a sudden passion engendered by a lawful or some just cause of provocation.

*State v. Ellis*, 74 Mo. 207; *State v. Kotovsky*, 74 Mo. 247. The court erred in failing to declare, as matter of law, what was a reasonable provocation. *State v. Dunn*, 18 Mo. 419; *State v. Jones*, 20 Mo. 58; *State v. Ellis*, 74 Mo. 216. Defendant was entitled to an instruction for manslaughter in the fourth degree, under both section 1249 and section 1250, Revised Statutes. The court erred in permitting the circuit attorney, over appellant's objection, to ask certain witnesses whether they had not been in the work-house. The record is the best evidence of conviction. 1 Greenleaf Ev., § 457; *State v. Rugan*, 68 Mo. 214; *State v. McGraw*, 74 Mo. 573; *State v. Lewis*, 80 Mo. 110. The court erred in refusing to permit the witnesses Sis Clark and Rachel Nighton to state what they saw of the difficulty. They both saw a part of it, but not all that was done.

*D. H. McIntyre*, Attorney General, for the State.

SHERWOOD, J.—The defendant, a negress, was indicted for murder in the first degree, and on trial had, was convicted of that offense. The person killed was Joseph Miller, a negro, and the killing was done by stabbing him with a knife. Various reasons are urged, why a reversal of the judgment should occur. For the most part, the cause was well tried, but, nevertheless, such errors occurred during the progress of the trial as must accomplish a reversal of the judgment.

I. The State should not have been permitted to ask the witness, Maria Fuller, if she had been confined in the work-house, and this too, over the objections of the defendant. If the witness had been sentenced to the locality mentioned, there was record evidence of the fact which could readily have been produced. *State v. Rugan*, 68 Mo. 214; *State v. McGraw*, 74 Mo. 573; *State v. Lewis*, 80 Mo. 110.

II. If there was any error in refusing to let Sis Clark and Rachel Nighton testify respecting the difficulty between

the defendant and the deceased which resulted in the homicide, it has not been pointed out. It does not appear that either of these witnesses knew anything about the affair. As to the witness Clark, she did not state that she saw Joe Miller at all, or that she knew him. She says she saw the defendant and "*a man* standing in Johnny Flynn's door; I did not know Joe Miller." And she further states, that she was not there when the fuss commenced, nor when it ended, and knew nothing about it. And as to the witness Nighton, it does not appear that she knew anything that was pertinent to the matter in controversy. She says she did not see any cutting. And besides, the court gave opportunity to defendant's counsel of stating what testimony he expected to elicit from this witness, and he refused to make any statement showing the relevancy of the testimony, and refused to avail himself of the offer made him by the court. In the absence of any showing to the contrary, we certainly shall not assume that the testimony of either of these witnesses was at all material. *Aull Savings B'k v. Aull,* 80 Mo. 199. On the contrary, so far as concerns the purposes of this appeal, we shall assume that the proposed testimony was valueless and without probative force.

III. Under the rulings of this court in the cases of *State v. McLaughlin,* 76 Mo. 320; *State v. Turner, Ib,* 350, and *State v. McGraw,* 74 Mo. 573, it was error to cross-examine a defendant testifying in his own behalf, as to matters not testified upon in the examination in chief. We have read the testimony of the defendant, both in chief, and on cross-examination, but do not find that the cross-examination extended beyond that in chief, at least if it did, it was as to matters so very trivial and unimportant, that we are not prepared to say that we should reverse because of anything in the cross-examination contained.

IV. The evidence on the part of the State well warranted conviction of murder in the first degree; indeed, the evidence may be said greatly to preponderate in favor of

that grade of homicide. An instruction was given as to murder in the second degree, and one as to self-defense, and one, also, as to an involuntary killing, and the jury were instructed that if they believed that such killing was done in the heat of passion, that they should find the defendant guilty of manslaughter in the fourth degree. Under the testimony of the defendant, herself, this last instruction was properly given, and is covered by the provisions of section 1249, R. S. 1879.

But there was other testimony which, if believed by the jury, brought the case under the provisions of section 1250, since that section recognizes an intentional killing when done in the heat of passion, caused for instance by a blow, as amounting to nothing more than manslaughter in the fourth degree. This was true as to manslaughter even at common law. And an instruction under that section, should therefore, have been given. For the errors heretofore pointed out the judgment should be reversed and the cause remanded. All concur.