## ANDERSON v. STATE
### (No. 991; Decided April 14, 1921; 196 Pac. 1047)

FALSE PRETENSES—INSTRUMENT OBTAINED NEED NOT BE SET OUT IN
INFORMATION—CRIMINAL LAW—DESCRIPTION OF CHECK OBTAINED
—DESCRIPTION OF NOTE OBTAINED—INDICTMENT AND INFORMATION
WAIVER OF DEFECTS—FAILURE TO MOVE TO QUASH—SUFFICIENCY OF
ALLEGATION OF DEFRAUDING COMPLAINING WITNESS—LOSS TO VIC-
TIM UNNECESSARY—ALLEGATION OF FRAUDULENT INTENT NEED NOT
PRECEDE EVERY ALLEGATION OF PRETENSE—COMMENT IN ARGUMENT
ON FAILURE OF ACCUSED TO TESTIFY IMPROPER—INSTRUCTION RE-
FERRING TO FAILURE OF ACCUSED TO TESTIFY IMPROPER—IMPEACH-
MENT OF DEFENDANT'S UNSWORN TESTIMONY NOT PERMISSABLE—
EVIDENCE OF PRIOR CONVICTION TO IMPEACH WITNESS—REMARKS
OF COURT THAT CERTAIN FACT CONSTITUTED NO DEFENSE, ERRONE-
OUS.

1.  An information or indictment for obtaining by false
    pretenses, an instrument calling for the payment of
    money need not set out such instrument in haec verba,
    but the instrument should be described in a manner suf-
    ficient to enable the jury to identify it when produced in
    evidence, and the accused to understand the charge
    against him.  A description by any name or designation
    by which the instrument may be usually known, or by
    the purport thereof, is required by statute in such cases,
    (Sec. 7467 C. S. 1920; Sec. 6170 C. S. 1910), but the pur-
    port or designation of the instrument must be so given
    that there may be no mistake as to its identification with
    the instrument produced in evidence.

2.  An information for obtaining by false pretenses, a check
    fully described except as to the bank upon which it was
    drawn and perhaps the person by whom it was signed,
    but wherein the words "the check, draft and bill of
    exchange of the said G. S. W." are followed by the
    words "of the personal property of the said G. S. W."
    sufficiently described the check as against a motion in
    arrest of judgment under Comp. Stats. 1920 Sec. 7305;
    Comp. Stats. 1910; Sec. 6004.

3.  An information under Comp. Stats. 1920, Sec. 7305; Comp.
    Stats. 1910, Sec. 6004, for obtaining by false pretenses a
    promissory note "the promissory note of the said G. S.

W. * * * of the personal property of the said G. S. W.'' sufficiently described the note as against a motion in arrest of judgment in the absence of a motion to quash under Comp. Stats. 1920, Sec. 7483; Comp. Stats. 1910 Sec. 6186.

4. Particulars omitted from a description of a check or note in an information alleged to have been obtained by false pretenses under Comp. Stats. 1920, Sec. 7305; Comp. Stats. 1910, Sec. 6004, if not excepted to by a motion to quash under Comp. Stats. 1920, Sec. 7483; Comp. Stats. 1910, Sec. 6186, are deemed to be waived by demurring to the indictment or pleading in bar, or not guilty, in view of Comp. Stats. 1920, Sec. 7487; Comp. Stats. 1910, Sec. 6190.

5. An information under Comp. Stats. 1920, Sec. 7305; Comp. Stats. 1910 Sec. 6004, sufficiently alleged that prosecuting witness was defrauded, where it alleged that he, believing and relying on the alleged false pretenses delivered to the defendant, the check and note aforesaid, the property of said prosecuting witness and of the value of $150.00 and $200.00 respectively.

6. The gravamen of the offense of obtaining property by false pretenses under Comp. Stats. 1920, Sec. 7305; Comp. Stats. 1910 Sec. 6004, is in making the false pretense and obtaining thereby a persons property or his signature, and does not depend upon ultimate loss to the victim or whether in fact he suffers any pecuniary loss.

7. An information for obtaining a check or promissory note by fraudulent pretenses, under Comp. Stats. 1920, Sec. 7305; Comp. Stats. 1910, Sec. 6004, need not repeat the averment of intent to defraud, and that defendant did then and there feloniously, knowingly, etc. immediately preceding each of the alleged pretenses, although such pretenses were not connected by the word ''and.''

8. It is improper for the prosecuting attorney before the jury to comment upon the failure of the accused to testify under oath, where he elects to make a statement without being sworn, under Comp. Stats. 1920 Sec. 7507; Comp. Stats. 1910 Sec. 6210. Where the prosecuting attorney in his argument to the jury stated that defendant had submitted himself to the Court ''not strictly as a witness, because he was not sworn'', and ''this man, by going on the stand without taking an oath, * * * but had he gone on the stand and taken the oath'' etc. and an

instruction that accused, when he makes a statement, under Comp. Stats. 1920, Sec. 7507; Comp. Stats. 1910, Sec. 6210 is not subject to cross examination or penalties for perjury or false swearing, held improper comments on defendant's failure to testify under oath although he made an unsworn statement under the statute.

9. In a prosecution for obtaining property by false pretenses where defendant elected not to be sworn under oath but to make a statement, under Comp. Stats. 1920, Sec. 7507, Comp. Stats. 1910 Sec. 6210, the Court erred in permitting a witness for the prosecution to testify that he had seen the defendant in a penitentiary; defendant's character not being in issue and his statement not being impeachable.

10. Where a former conviction of crime may be shown to affect the credibility of a witness, and that is the only competent purpose for showing that he has been in prisson, the fact may properly be shown only on cross examination, or by production of the record of conviction and oral testimony, if objected to, except on admission by the witness on cross examination, is not admissible to prove it.

11. In a prosecution for obtaining money by false pretenses, a remark of the Court while defendant was making an unsworn statement, that any attempt to settle this matter is no defense, however true as a legal proposition, should not have been stated at the time, since such remark tended to discredit what defendant said, as well as what he might say thereafter, and the error was cured by instruction given with the other instructions in the case, that it was for the jury to say how much weight they will place upon the statement of the defendant as well as the testimony of the witnesss in the case, and the error was not cured by an instruction, given with other instructions in the case, that it was for the jury to say how much weight they will place upon defendant's statement as well as on the testimony of the witnesses in the case.

ERROR to the District Court, Converse County, ERNEST C. RAYMOND, Judge.

Frank E. Anderson was convicted of obtaining property by false pretenses and brings error. The facts are stated in the opinion.

*S. E. Phelps,* for Plaintiff in Error.

The information did not state an offense; alleged false pretenses are insufficiently charged. The check in question was not fully described. There was no allegation that G. S. Williams was defrauded. (Current v. People, 153 Pac. 684; Kraft v. State, 217 S. W. 1038; Bonnell v. State, 64 Ind. 498; Martins v. State, 17 Wyo. 319; 98 Pac. 709; People v. Weakley, 62 Mich. 297; 28. N. W. 871.) The defrauding of complaining witness is the gravamen of the offense. The word "obtained" is not sufficient by itself to allege the crime. McCann v. U. S., 2 Wyo. 274; McGinnis v. State, 16 Wyo. 76, 91 Pac. 936; U. S. v. Post, 113 Fed. 154; State v. Sekrit, 32 S. W. 977, where it was said "the defendant must be specially brought within all the material words of the statute, and nothing can be taken by intendment" 22 Cyc. 339; U. S. v. Cook, 17 Wall. 174; 21 L. Ed 538. The prosecutor was guilty of misconduct by referring in his argument to the unsworn statement of defendant. Leslie v. State, 10 Wyo. 10, 69 Pac. 2; State v. Holmes, 65 Minn. 236; 68 N. W. 11; Wilson v. U. S. 149 U. S. 68; 37 L. Ed. 650.) The state was not entitled to cross examine upon an unsworn statement made by defendant, but it is improper to refer to the fact. (State v. Taylor, 7 Idaho 134; 61 Pac. 288.) Instruction No. 5 with reference to an unsworn statement was prejudicial to defendant. (Comp. Stats. 1910, Sec. 6210, Leslie v. State, supra.) Defendant's motion for a direct verdict for insufficiency of evidence should have been sustained. (22 Cyc. 339; McCann v. U. S. 2 Wyo. 274 State v. Sekrit, 32 S. W. 977.) The charging words of the information relate only to the first representation alleged. This is insufficient Current v. People 153 Pac. 684. That the representation as to control of Glendo Bank by Plymouth Security Company was insufficiently set forth and the same may be said of allegations with reference to other representations as to control of said bank, and the deed as to stockholders also

as to defendant representing himself as a director of the Miles City Bank and vice president of the Rosebud Montana Bank. It was error to permit the testimony of Backland as rebuttal as defendant had made his statement. Thompson on Trials (2 Ed) Sec. 664. It was error to admit the testimony of witness to the effect that he had seen defendant in the Minnesota penitentiary as a prisoner. The giving of instruction No. 3 insufficiently stated the elements of the offense and was erroneous, Martins v. State, supra. Refusal to give defendants requested instruction No. 1 was erroneous, for the reason that it did not state the law relating to the elements of the offense. Lively v. State, 74 S. W. 321. The Court erred in giving instruction No. 1 of the state wherein it was set forth that complaining witness was defrauded by defendant. (U. S. v. Cook, 17 Wall. 174; 21 L. Ed. 538.) The Court erred in stating to the jury during defendant's testimony that any attempt on the part of defendant to settle the matter or return the money or the notes, as shown by the testimony, was no defense at all. This statement was clearly prejudicial to defendant and coming from the Court during the giving of defendant's testimony undoubtedly prejudiced the jury against defendant. The Court erred in overruling defendants motion in arrest of judgment. The sentence imposed by the trial court reflects prejudice and is entirely out of proportion to the offense alleged to have been committed.

*W. L. Walls,* Attorney General, and *Vincent Carter,* Deputy Attorney General, for Defendant in Error.

The information as framed charged an offense under the law for obtaining choses in action, money etc. by false pretenses with intent to cheat and defraud. (State v. Alexander, 119 No. 448; Com. v. Devlin, 141 Mass. 423.) The testimony of Joseph Backland to which exception was taken does not appear to be material in fact the witness would not testify to any fact or circumstances concerning

which the defendant was then upon trial. The fact that Anderson had been an inmate of the Minnesota State prison was immaterial except as affecting the question of his credibility. Exception is taken to remarks of the prosecutor with reference to the unsworn statement made by defendant under the rule provided by 6210 Comp. Stats. As the state was precluded from cross examining defendant as to facts stated in his unsworn statement, it would seem that the state should be permitted to at least explain why there was no cross examination. The point was fully covered by instructions of the court. Upon the whole record, it is clear that the Court did not err in refusing a directed verdict of not guilty. The case of Current v. People, 153 Pac. 684, cited by plaintiff in error as against the sufficiency of the information does not seem to be fairly in point. Smith v. State, 33 Ind. 159 and Bonnell v. State, 64 Ind. 498 which support the rule that it is necessary to set out a copy of the instrument in the information in cases of this class, was over ruled in the case of Lefler v. State, 153 Ind. 82, which seems to be a more reasonable interpretation of the statute. Neither is the case of Martin v. State, 17 Wyo. 319 applicable with reference to the question of fraud. The fact that the complaining witness was deprived of his property by false representations constitutes fraud. (Com. v. Ferguson, 121 S. W. 967; 24 L. R. A. 116.) The essential elements of proof seem to be clearly stated in People v. Weakley, 62 Mich. 297 and the present case comes within the rule. The case of McGinnis v. State, 16 Wyo. 72 does not sustain the contention of plaintiff in error. The rule announced there was that unless the statute fully sets forth the elements of the offense the material facts and circumstances must be alleged in addition to the language of the statute. The information in the case at bar meets the requirements stated in U. S. v. Post, 113 Fed. 852; 22 Cyc. 339; U. S. v. Cook, 17 Wall. 174. This case differs from Leslie v. State, .10 Wyo. 10 for the reason that here the defendant made

an unsworn statement, so it was proper for the Court to instruct the jury as to the nature of the law of which defendant availed himself in making such statement. Defendant was not, in a legal sense, a witness in the case and it was proper for the jury to be instructed as to the nature of the statute under which defendant made his statement. Certainly Section 6210 Comp. Stats. 1910 was not devised to obstruct or cheat justice. It was in fact devised as is shown by its history to remove certain common law disabilities under which accused persons labored. Lying misrepresentations made for the purpose of inducing other persons to part with their property, are nevertheless, legal even though characterized "mere puffs". The Court instructed the jury fully and completely on the law of the case, and it would seem that defendant had a fair trial. The rules of exactness contended for by plaintiff in error would render it impossible to successfully prosecute a criminal for false pretenses. The statements made by defendant to Dr. Williams were undoubtedly made to cheat and defraud him and did defraud him of property of the value of $25.00. Com. v. Ferguson, supra. The verdict of the jury and judgment of the Court should be affirmed.

*S. E. Phelps* for plaintiff in error.

The information clearly shows that there is no connection between the second and subsequent alleged representations. Exceptions to the information are sustained by Current v. People, 153 Pac. 684. It was error for the Court to refuse defendants instruction No. 1. The information, while charging the obtaining of a check with intent to cheat and defraud Williams, complaining witness, does not allege that Williams was in fact defrauded. The Kentucky statute makes the intent or attempt to commit fraud a crime, and of course under such statute it is immaterial whether the complaining witness was actually defrauded or not. That Wyoming has no statute making

it a crime to attempt to obtain goods by false pretenses is pointed out in Martin v. State, 17 Wyo. 319, and as we read that opinion it is necessary that the complaining witness was actually defrauded in order to constitute the crime of false pretenses. People v. Weakley, 62 Mich. 297, to the same affect requiring proof that the complaining witness was actually defrauded. For the above reason the case of Com. v. Ferguson, (Kentucky) is in point here. Suppose the check in question was invalid. There would be no crime committed in obtaining it from the holder in that event. People v. Morphy, 34 Pac. 623. Lefler v. State, supra, is silent as to the description of the property obtained and does not sustain defendant in error. The check and note should have been pleaded in *haec verba.* The witness Backland was called into Court by the prosecutor for the purpose of trying to surprise and embarrass the accused while he was making his statement to the jury; the testimony of the witness Backland was offered as rebuttal and as no rebuttal was permissible, under the circumstances, it should have been excluded.

The entire testimony of Backland was inadmissible under the circumstances. Proof of perpetration of a separate and distinct crime is not admissible in aid of conviction upon another crime charged. Horn v. State, 12 Wyo., 80. Paulson v. State, 94 N. W. 771. The conduct of the prosecutor in commenting upon defendant's unsworn statement and the absence of cross examination was improper and highly prejudicial. We believe the cause should be reversed.

POTTER, C. J.

Upon an information filed on April 5, 1919, charging the commission of the offense on October 26, 1918, the plaintiff in error, F. E. Anderson, was convicted of the crime of obtaining property by false pretense, under a statute defining the crime as follows: ''If any person or persons shall knowingly and designedly, by false pretense or pre-

tenses, obtain from any other person or persons any chose in action, money, goods, wares, chattels, effects, or valuable thing whatever, with intent to cheat or defraud any such person or persons of the same, every person so offending shall be deemed a cheat, and upon conviction, where the value of the property obtained shall be twenty-five dollars or more, shall be imprisoned in the penitentiary for a period of not more than ten years.'' If the value shall be less than twenty-five dollars the punishment prescribed is a fine not exceeding one hundred dollars, or imprisonment in the county jail not more than six months. In either case it is prescribed that the sentence shall include restoration of the property fraudulently obtained. Comp. Stat. 1920, § 7305; Comp. Stat. 1910, § 6004.

Several questions are presented upon exceptions relating to the sufficiency of the information and its effect as charging one or several false pretenses. Omitting such parts of the information as are not material in considering such questions, it alleges: That F. E. Anderson * * * on the 26th day of October, 1918 * *.* with intent then and there to defraud another, towit: G. S. Williams, did then and there feloniously, knowingly, designedly, and by false pretenses pretend and represent to him, the said G. S. Williams, that the Plymouth Securities Company, of which he, the said F. E. Anderson, was president, owned a controlling interest in the Glendo State Bank; That one Harry Devine was putting a deal through for the Plymouth Securities Company to get control of the Glenrock State Bank; That said Plymouth Securities Company was operating a chain of banks in the State of Montana and that from this chain of banks the said Company had earned sufficient profits to declare a twenty per cent dividend, and that the money had already been set aside for the payment of said dividend; That the following named persons, to-wit: Dr. Leeper, Dr. Lathrope, and Ex-Governor Brooks, were stock-holders in said company; That the

said F. E. Anderson was a director of the First National
Bank of Miles City, Montana, had been Vice-President of
the Rosebud State Bank of Rosebud, Montana, and was
Chairman of the Board of Directors of the county banks
of Miles City, Montana; and the said F. E. Anderson did
then and there offer to sell to G. S. Williams shares of
stock in the said Plymouth Securities Company; and the
said G. S. Williams, then and there believing said false
and felonious pretenses and representations, and being
deceived and induced thereby, did then and there purchase
five shares of stock in said Plymouth Securities Company
for the sum of three hundred fifty dollars, and did then
and there in payment of said sum "pay and deliver to
the said F. E. Anderson the sum of one hundred fifty dol-
lars ($150.00) of the check, draft and bill of exchange of
the said G. S. Williams of the personal property of the
said G. S. Williams of the value of one hundred fifty dol-
lars ($150.00), said check and draft being of date of Oc-
tober 26, 1918, and for the sum of one hundred fifty dollars
($150.00), and did then and there deliver to the said F. E.
Anderson the promissory note of the said G. S. Williams
of the sum of two hundred dollars ($200.00) and of the
value of two hundred dollars ($200.00) of the personal
property of the said G. S. Williams and being dated Octo-
ber 26, 1918, and the said F. E. Anderson did then and
there feloniously, fraudulently, designedly, knowingly, by
means of said false and felonious pretenses and represen-
tations, obtain from the said G. S. Williams the said check,
draft, and bill of exchange * * * and the said promissory
note * * *, with intent to cheat and defraud him, the said
G. S. Williams." The remaining averments charge the
falsity of each of the said alleged pretenses and that the
said Anderson at all times then and there knew that they
were false.

The sufficiency of the facts stated in the information to
constitute an offense was challenged in the district court
only by a motion for arrest of judgment, and the only

error here assigned in that respect is the overruling of said motion. The objections urged against the information under that assignment are: That it fails to set out in full or sufficiently describe the check and note alleged to have been obtained. 2. That it fails to allege that said Williams was defrauded. There was another ground stated in the motion which, if sustained, would not affect the sufficiency of the information, but its only effect would be to eliminate all but the first of the alleged false pretenses; the point suggested being that the first of the alleged pretenses and representations is the only one alleged to have been feloniously, knowingly and designedly made.

It is contended that the check and note should have been set out *in haec verba,* in the absence of a statement of facts showing a sufficient reason for not doing so, and the case of Bonnell v. State, 64 Ind. 498 is cited in support of that proposition. But the case does not go to that extent. It does hold that an indictment for obtaining by false pretenses an instrument calling for the payment of money should describe the same by setting out its substance, at least, or allege a substantial reason for the failure to do so. The instrument in that case was a bank check described in the indictment as ''the check of John King, Jr., as such receiver, upon the Commercial Bank of Cincinnati, for the sum of $34.51, which check was then and there of the value of $34.51.'' That description was held to be insufficient for the reason that it did not certainly show by whom the check was signed or executed nor its date, and no other particulars than the amount and value of the check and the bank upon which it was drawn. And it is not the rule that the instrument must be set out *in haec verba.* ''When the thing obtained is a written instrument or the signature of a person thereto, it is not necessary to set it out *in haec verba,* but it must be described with such certainty as to identify it when produced in evi-

dence so that defendant may not subsequently be indict-
ed for the same offense.'' 19 Cyc. 433. But that is not to
be understood as requiring necessarily a description of
the instrument with such particularity that no part of it
shall be omitted. ''The property should be described, at
least in part, with such certainty as to enable the jury to
decide whether the chattel proved to have been obtained
is the same as that upon which the indictment was found-
ed.'' 11 R. C. L. 860. And preceding the words last
quoted it is said: ''It is laid down by many authorities
that in indictments for obtaining goods under false pre-
tenses the property should be described with as much ac-
curacy and particularity as indictments for larceny.''
And in indictments for larceny of a written instrument the
description thereof should be sufficient to enable the jury
to identify the instrument, and the accused to understand
the accusation; ''no greater particularity is required.''
25 Cyc. 77; Joyce on Indictments, § 348.

In State v. Carter, 112 Ia. 15, 83 N. W. 715, a prosecu-
tion for obtaining a signature to a bank check by false
pretenses, the indictment alleged the obtaining of the sig-
nature of one J. L. Miller to a written instrument ''com-
monly called a bank check for the sum of thirty-five dol-
lars'', and that the ''said J. L. Miller did then and there
draw and sign said bank check * * * and deliver the same to
said S. E. Carter.'' The court held the description suffi-
cient and distinguished the case from the Indiana case of
Bonnell v. State, supra, by saying that the Bonnell case
differed from the instant case in this: ''That in the
Bonnell case the date of the check was not given, nor did
it appear who made or executed the same.'' And the
court cited Commonwealth v. Brettun, 100 Mass. 206, 97
Am. Dec. 95 as supporting the conclusions. In that case an
indictment for larceny of a note was held sufficient as to
the description of the note, the same being therein de-
scribed merely as ''one promissory note of the value of

three hundred dollars, and one piece of paper of the value
of three hundred dollars.''

And it is declared by statute in this state that it shall
be sufficient in a case of this kind to describe the instru-
ment "by any name or designation by which the same
may be·usually known, or by the purport thereof." Comp.
Stat. 1920, § 7467; Comp. Stat. 1910, § 6170. Under such
a statute, however, it may be necessary that the purport
or other proper designation of the instrument shall be so
given "that there may be no mistaking as to .the identifica-
tion of the instrument described with that produced in
evidence." 11 R. C. L. 860, 861.

The check seems to have been fully described except as
to the bank upon which it was drawn, and perhaps the
person by whom it was signed. But since the words "the·
check, draft, and bill of exchange of the said G. S. Wil-
liams," are followed by the words "of the personal prop-
erty of the said G. S. Williams" it seems evident that the
former words were used in the sense that the check was
drawn and signed by the person named, for the only other
meaning it could have would be that the check belonged
to him or was his property, and if taken in that sense it
would state merely what is expressly stated in the words
that immediately follow. And so, in the case of the note
it is alleged to be "the promissory note of the said G. S.
Williams * * * of the personal property of the said G. S.
Williams" seeming to indicate like the check, first, that
the note was made and executed by him, and, second, as
expressly, that it was his property. The date and amount
of the note is also alleged, but the date of maturity is
omitted, and the name of the person, if any, to whom
it was made payable. Although the description of the
check does not state in so many words that it was made
payable to the defendant, the averment is that the prose-
cutor did *pay* and deliver to the defendant the sum of
$100 of the check" etc.; which would seem to indicate a
check collectible by defendant. But that feature of the

averment relating to the check is lacking in the description of the note, so that the latter contains nothing to show to whom it was made payable or whether its possession would be sufficient authority for its collection when due.

We are satisfied, however, that upon the principle above stated, and under the provision aforesaid of our statute, the descriptions must be held sufficient, at least as against a motion for arrest of judgment. If the particulars omitted from the description of the check or note might be held of sufficient importance for the purpose of identification, or for any other purpose, the defect would be one of form only or in the manner in which the offense is charged, to be objected to by a motion to quash. Comp. Stat. 1920, § 7843, Comp. Stat. 1910, § 6186. Such defects, if not excepted to by a motion to quash, are deemed to be waived by demurring to the indictment or pleading in bar, or not guilty. Comp. Stat. 1920, § 7487, Comp. Stat. 1910, § 6190. Wilbur v. Territory, 3 Wyo. 268 And it does not appear that such a motion was filed in this case. The objection as to description was made in the Indiana case of Bonnell v. State, supra, by a motion to quash; and, therefore, the court was not there considering the sufficiency of the description as against an objection made for the first time by motion in arrest. But see Chandler v. State, 141 Ind. 106, 39 N. E. 444, where it is said that, ''for uncertainty in the statement of the facts * * * an indictment or information can only be assailed by a motion to quash and never by a motion in arrest or by an assignment here for the first time that the facts stated in the pleading are not sufficient to constitute a public offense.''

The information sufficiently alleges that Williams was defrauded, assuming an averment to that effect to be necessary. It alleges that the said Williams, believing and relying upon the alleged false pretenses, delivered to the defendant the check and note aforesaid, the property of

said Williams and of the value of $150.00 and $200.00 respectively. Discussing the question upon similar allegations, it was said in Nebraska:

"The criticism made on the information is that it is not therein alleged that the complaining witness was injured or damaged by the false pretenses of the defendant. So it is not in as many words, but it is averred, in substance, that, by means of the false representations, the prosecuting witness was induced to and did part with property of the value of $235. Certainly this amounts to a charge of actual injury and damage, if it were essential that the information should contain such an averment. The obtaining of the property by means of false pretenses constituted the offense. It was unnecessary that the information should allege that the defendant did not pay for the horses at the time agreed upon, nor that he did not pay Craig. The crime, if it ever existed, was complete when the property was fraudulently obtained." West v. State,. 63 Neb. 257.

In Kentucky it is said that it is not necessary that an indictment for false pretenses shall charge that the person to whom the false pretenses were made sustained any loss; that when the owner is induced to ,and does, part with his property by reason of the false pretense, the offense in this particular is completed, and it is wholly immaterial whether he actually or ultimately suffers a loss or not. Commonwealth v. Ferguson, 135 Ky. 32, 121 S. W. 967, 21 Ann. Cas. 434. While the fraud must actually be accomplished to the extent that some one is prejudiced thereby, "the gravamen of the offense is in making the false prestense, and obtaining thereby a person's property or signature and does not depend upon ultimate loss to the victim or whether in fact he suffers any pecuniary loss." 11 R. C. L. 843. And the rule as to alleging loss to the prosecutor is stated as follows in 19 Cyc., pages 435 and 436: "An indictment for obtaining property by false pretenses need not allege specifically that prosecutor

has suffered loss by reason of the false pretense, but it must set forth facts sufficient to show that he suffered a legal injury as that term is understood in the law of false pretenses, else it fails to charge an offense.''

While in some of the approved forms of indictments for false pretenses found in the books a distinct averment that the party to whom the pretenses were made was thereby defrauded, in others the fact is not specifically stated, but rests upon the averments that the accused had obtained property of and from the party to whom the false pretenses were made. See Joyce on Indictments, pp. 618-621; Gillett on Cr. L. § 217; 8 Ency. Forms, pp. 558-566. It is true that the party from whom the property was obtained must be actually defrauded by means of the alleged false pretense or pretenses to make the crime complete, as stated in Martins v. State, 17 Wyo. 319, 98 Pac. 709, 22 L. K. Ann 645, citing 19 Cyc. 411. But it is not essential that such party shall have suffered or will necessarily suffer actual pecuniary loss, and this principle is stated in 19 Cyc. page 435, cited as above in the Martins case. The owner of the property is defrauded when it is obtained unlawfully by means of the false pretense or pretenses, though he may not suffer actual pecuniary loss. The question became material in the Martins case for the reason that the property obtained,—money in that case— was not the money or property of the person to whom the alleged false pretenses were made, and from whom the money was obtained, nor was it shown by the evidence that he had any special interest therein; and he was not, therefore, defrauded, and the proof of ownership in that case was different from that alleged. That case, therefore, is clearly distinguishable from the case at bar, and is not authority for the proposition that the information here is insufficient. The case of Kraft v. State, (Tex.) 217 S. W. 1038, also cited by counsel for plaintiff in error, is like the Martins case in the particular stated.

The objection to the information above mentioned as a

third ground of the motion in arrest is insisted upon here
in support of exceptions to instructions and admission of
evidence, and also upon the question of the sufficiency of
the evidence to sustain the verdict, which was challenged
by the motion for a new trial and is here assigned as
ground for reversal.   The specific contention is that the
words "with intent then and there to defraud another, to-
wit:    G. S. Williams, did then and there feloniously,
knowingly, designedly, and by false pretenses pretend
and represent to him, the said G. S. Williams" which im-
mediately precede a statement of the several pretenses is
not connected with any of said pretenses except the first,
viz:    That the Plymouth Securities Company owned a
controlling interest in the Glendo State Bank.   It is con-
tended also in that connection that the making of said
first alleged pretense was not established, nor its falsity,
and that it was error to admit evidence relating to the
others and to instruct that proof of any one of the alleged
pretenses and its falsity would be sufficient.   It is true, as
we read the record, that the said first alleged pretense
was not proven as alleged, nor was it proven that the
representation in that particular, as testified to by Will-
iams, that "he (the defendant) had bought the Glendo
State Bank" was false.   But it was not necessary to re-
peat the averment of intent to defraud and that defendant
did then and there feloniously, knowingly, designedly,
etc., immediately preceding each of the several alleged
pretenses.   The usual form is to connect the pretenses,
where more than one is alleged, by the word "and"; but
without that word, and that is all that is lacking in that
respect in this information, the natural meaning is the
same, and the allegations are to be understood as charging
each of the alleged pretenses as well as the first to have
been made feloniously, etc., and with intent to defraud the
person named.   A like manner of averment may be found
among approved forms in the books.   8 Ency. of Forms.
No. 9493 and 9496 pp. 561, 565.

Upon the trial the plaintiff in error, as defendant below, · did not offer himself as a sworn witness, but made a statement without being sworn, as authorized by the provisions of our statute, which read as follows:

"The defendant in all criminal cases, in all courts in this state, may be sworn and examined as a witness, if he so elect, but shall not be required to testify in any case. If the defendant so elect, he may make a statement to the jury without being sworn, but the neglect or refusal to make a statement shall not create any presumption against him, nor shall any reference be made to, nor shall any comment be made upon, such neglect or refusal." Comp. Stat. 1920, § 7507; Comp. Stat. 1910, § 6210.

The bill of exceptions recites that in the opening address of the prosecuting attorney to the jury he used these words: "The defendant in this case, Mr. Anderson, has submitted himself to the court, not strictly as a witness, because he was not sworn." Also: ·"He submitted him·self to this court not as a witness, but he has gone on the stand and made a statement, not under oath, in which he makes certain statements." And that the prosecuting attorney used the following words in his closing address to the jury: "This man, by going on the stand without taking an oath, excluding the prosecuting attorney from cross-examination," * * * "But had he gone on the stand and taken the oath". The bill also recites that to each of said comments on the fact that defendant was not sworn as a witness the defendant objected at the time and asked the court to restrain the prosecution from commenting on said fact, that the objections and requests were each overruled, and in each instance the defendant excepted. The bill also recites that defendant excepted to the following instructions:

"You are instructed that under the laws of this state the defendant is not required to testify, but he may testify if he desires, or he may make a statement to the jury without being sworn. If the defendant elects to be sworn and

testify, he then becomes a witness in his own behalf and may be cross-examined the same as any other witness, and is subject to all the pains and penalties of perjury or false swearing, the same as any other witness. If, as in this case, the defendant does not take the oath of a witness, and is not sworn to testify, but makes a statement, then he is not subject to cross-examination, and any statement which he makes cannot be made the subject of a prosecution for perjury or false swearing.''

It is contended that the remarks and instruction quoted were improper and in violation of the statute and defendant's right to elect not to testify upon oath as a witness. And we think that by said remarks and instruction the prosecuting attorney and the court did respectively refer to and comment upon the failure of the defendant to be sworn and examined as a witness, and that it was improper. The provision of the statute that the neglect or refusal to make a statement shall not create any presumption against the defendant, and that no reference to or comment upon ''such neglect or refusal'' shall be made, must we think, be understood and construed, having in mind the purpose of the statute and of such prohibitory provision, as forbidding as well any reference to or comment upon the neglect or refusal to be sworn and examined as a witness. And that would prevent any such reference or comment where the defendant has elected to make an unsworn statement as well as where he has elected to remain silent. The statute was so construed in Leslie v. State, 10 Wyo. 10, 65 Pac. 849; 69 Pac. 2, where the defendant did not go upon the stand at all, and had requested an instruction that he was not required to testify and that the jury had no right to presume anything against him because of his failure to testify. The court referred to the statute as forbidding any reference to or comment upon a failure to testify, and upon that ground the refusal of the instruction was held not to be error. The attorney general, while contending that the instruction aforesaid in this case and the remarks of the

prosecuting attorney were not improper because not comments on or references to the failure to testify but merely criticisms of the statement, concedes in his brief that the omission to make a statement, "Either under the sanctity of an oath or otherwise" is forbidden by law. There can be no possible reason for prohibiting comment upon the failure to make a statement not upon oath or a reference thereto that would not equally and even more strongly apply to a failure to testify as a witness upon oath, and to permit comment upon a failure to testify while forbidding it as to a failure to make a statement would be anomalous, to say the least, and certainly could not have been intended.

The provisions of our statute are peculiar to this state in the respect that they permit an election to be sworn and examined as a witness or to make a statement without being sworn. In England, and in the several other jurisdictions of this country where the common law incompetency of an accused as a witness in his own behalf has been abolished by statute permitting him to testify at his own election or request, he must either testify as a witness on oath or remain silent; and such disqualification has been so removed in England and in this country, except in the State of Georgia where the statute permits only the making of a statement not on oath. (1 Wharton's Cr. Ev. 10th Ed. §§ 427, 428; 1 Wigmore on Ev. § 579; 2 id. § 892, note 1; 30 Am. & Eng. Ency. L. 2nd Ed. 916, 980.) The purpose of such statutes is to give the accused "the fullest opportunity to testify, but permitting no inference whatever to be drawn from his silence; the statutes confer a privilege, but do not impose an obligation; hence, while he is rendered competent, he cannot be compelled, in any criminal case, to become a witness against himself." (1 Wharton's Cr. Ev. § 428.) If our statute should be construed as not forbidding comments upon a failure of an accused to be sworn as a witness the provision permitting him to be sworn, which was intended as a privilege to be availed of or not at his election, would tend to operate as a penalty whenever de-

fendant elects to remain silent or to make an unsworn state
ment.

Our statute was not originally in the form above quoted.
As enacted, in 1869, (Comp. L. 1876, Ch. XIV, §§ 128 and
129), it provided that the person charged shall, at his own
request but not otherwise, be allowed to make his statement,
"nor shall the neglect or the refusal to make a statement
create any presumption against him, nor shall any reference
be made to, nor any comment upon, such neglect or refusal."
Thus the law remained until 1877, when, by an act ap-
proved December 6, 1877, it was provided: "Section 1.
The defendant in all criminal cases, in all the courts in this
territory, may be sworn and examined as a witness, if he
so elect, but shall not be required to testify in any case.
Sec. 2.   If the defendant so elect, he may make a statement
to the jury without being sworn.   Sec. 3.   All acts and
parts of acts inconsistent herewith are hereby repealed."
(Laws 1877, p. 25.)   The provisions of the old and new
statute were wisely placed in a single section of the Revis-
ion of 1887, reading as above quoted.   The only substantial
change in the legislation was the added privilege of elect-
ing to testify as a witness on oath, protected by the provi-
sion that such testimony shall not be required in any case.
As the restrictive provisions of the former statute were not
repealed they became applicable, we think, to a failure of
the accused to avail himself of either privilege.   And we
think it necessary to so construe the statute to avoid defeat-
ing its purpose and to preserve the constitutional right of
the defendant to decline to testify against himself, espec-
ially as such restrictions would be implied for the reasons
stated, if omitted from the statute.

Without an express statutory prohibition of unfavorable
references to or comments upon a failure to testify, it is
generally held that they would be improper under the pro-
vision permitting the defendant to be sworn and examined
as a witness only at his own request or if he so elect, and for
the reason, mainly, that they disregard the presumption of

innocence to which a defendant is entitled throughout the case, and violate his constitutional right aforesaid. In several of the states it is provided merely in that respect that the neglect or refusal to testify shall not create any presumption against the defendant. Referring to such a statute it was said in Commonwealth v. Scott, 123 Mass. 239:

"By our system of jurisprudence, the government has no right to interrogate a person accused of crime, or to compel him to testify, but must sustain its charge by independent evidence. The accused has the right to simply deny his guilt, and to rely upon the legal presumption of his innocence until he is proved to be guilty. In accordance with this ancient rule of the common law, the Constitution of the Commonwealth declares that no subject shall be compelled to accuse or furnish evidence against himself. The statutes allowing persons charged with the commission of crimes or offenses to testify in their own behalf were passed for their benefit and protection, and clearly recognizes their constitutional privilege, by providing that their neglect or refusal to testify shall not create any presumption against them. * * * And this court has decided that such silence cannot be taken into consideration by the jury in determining whether a defendant is or is not guilty, and that an equivocal instruction upon this matter entitles the defendant to a new trial; Chief Justice Chapman saying: 'It is important that courts should carefully guard his constitutional right.' (Commonwealth v. Harlow, 110 Mass. 411)." And the court condemned certain remarks in the closing argument for the prosecution, which, it was said, tended to persuade the jury that the omission of the defendants to testify implied an admission or a consciousness of the crime charged, and granted a new trial for the error of the court in ruling that the prosecuting attorney had a right to comment upon reasons given by defendant's counsel for his not testifying.

The Act of Congress on this subject also declares that the defendant's failure to request to be a witness "shall not

create any presumption against him." And in Wilson v. U. S., 149 U. S. 60, 37 L. ed 650, 13 Sup. Ct. 765, it is said: "To prevent such presumption being created, comment, especially hostile comment, upon such failure must necessarily be excluded from the jury. The minds of the jurors can only remain unaffected from this circumstance by excluding all reference to it." And the court quotes approvingly from Commonwealth v. Scott, supra. In that case, (Wilson v. U. S.) the district attorney said to the jury: "If I am ever charged with crime, I will not stop by putting witnesses on the stand to testify to my good character, but I will go upon the stand and hold up my hand before high Heaven and testify to my innocence of the crime." The court said that by such remark, it was intimated to the jury as plainly as if it had been said in so many words, "that it was a circumstance against the innocence of the defendant that he did not go upon the stand and testify." And, continuing: "Nothing could have been more effective with the jury to induce them to disregard entirely the presumption of innocence to which by the law he was entitled, and which by the statute he could not lose by a failure to offer himself as a witness."

Under a like statute in New York, comments upon a failure to testify are held improper, and it was said, in Ruloff v. People, 45 N. Y. 213: "If with this statute in force, the fact that he is not sworn can be used against him, and suspicion be made to assume the form and have the force of evidence, and circumstances, however slightly tending to prove guilt, be made conclusive evidence of the fact, then the individual is morally coerced, although not actually compelled to be a witness against himself. The constitution, which protects a party accused of crime from being a witness against himself, will be practically abrogated." And further, that if comments are allowed upon the failure of the accused to testify, "a provision intended for his benefit will prove a trap and a snare." The statute of Oklahoma forbidding such comments is said to be

"in accordance with the constitutional guaranty that 'no person shall be compelled to give evidence which will tend to incriminate him, except as in this constitution specifically provided.'" (Weinberger v. State 8 Okl. Cr. 441, 128 Pac. 160; Brown v. State, 181 Pac. 318.) So in California the court say: "It is fundamental that, since a defendant may not be compelled to be a witness against himself, a prosecuting officer may not comment adversely upon his failure to take the witness stand in his own behalf." (People v. Waugh, 30 Cal. App. 402; 158 Pac. 336.) The Ohio Supreme Court say in Tate v. State, 76 O. St. 537, 10 Ann. Cas. 949: "The obvious purpose of the statute was to confer upon an accused person the right, previously denied him, to testify in his own behalf, and to so confer it as to preserve unimpaired his constitutional immunity from being compelled to testify against himself."

In Georgia, the only state other than Wyoming, as we understand, where a statutory provision still remains permitting a defendant in a criminal case to make a statement without being sworn, and the only state having no statute permitting the defendant to testify upon oath, the statute does not provide that the failure to make a statement shall not create any presumption against the defendant, nor that no comment shall be made upon such failure, but it provides that the prisoner shall have the right to make such statement in the case as he may deem proper in his defense, that it shall not be under oath, and shall have such force only as the jury may think right to give it, that they may believe it in preference to the sworn testimony in the case, and that the prisoner shall not be compelled to answer any questions on cross-examination, should he think proper to decline to answer.

Applying that statute, it is held in Georgia substantially that no comment should be made upon the fact of the failure of a defendant to make a statement. (Bird v.

State, 50 Ga. 582; Robinson v. State, 82 Ga. 535, 9 S. E. 528.)  In Bird v. State, the trial court had charged the jury that they might take into consideration the fact that defendant failed to make a statement, and to give that fact such weight as they might see fit with the other evidence.  The Supreme Court, holding that to be error, said: "Was this charge correct?  Does it not directly imply that the failure of defendant to make a statement is, in law, some evidence against him, and that the failure may be considered by the jury *with the other evidence* to determine his guilt?  We do not think that the statute giving this right to a defendant intended that it should be counted against him if he did not avail himself of it. If so, it should be stricken from the statute book at once. * * *  It would be terrible if what a defendant said in his behalf could not practically count much for him, certainly not as other evidence—and yet a failure to say something should count as evidence against him, to be considered by the jury 'with the other evidence.'  If this be so, the statute is a sword to pierce, where it was intended, whether wisely or not, as something of a shield." In Robinson v. State it was claimed that the court had erred in allowing the state's counsel to argue upon the failure of defendant to make a statement.  Defendant's counsel had privately called the court's attention to such argument and the court said that it would interpose if the point be made openly, but that being declined, the court stated he would protect defendant in his charge; and as that was carefully done, the appellate court disposed of the objection by saying that the trial court had been particular to obviate any hurtful result of such argument of the state's counsel by an appropriate charge.  And see Durant v. People, 13 Mich. 351.

Considering alone that part of our statute which permits the defendant to elect to be sworn and examined as a witness, it provides also that he shall not be required to testify in any case; and that was clearly intended to protect

him in his constitutional right. It is clear that it was not intended that the failure to testify should in any degree lessen the presumption of innocence to which the accused is entitled. And this court said in Leslie v. State, supra: "The apparent purpose is that, in cases where the defendant does not desire to testify, the trial shall proceed, as nearly as practicable, as at common law, so far as the testimony of the defendant is concerned; that is, that he may rest upon his plea of not guilty, and the state must prove every element of the crime against him, or he must be acquitted by force of the presumption of his innocence."

If it may be assumed that the prosecuting attorney in his argument to the jury and the court by an instruction might properly have stated that the defendant's statement was not on oath and that he was not subject to cross-examination thereon, and that it would be possible to do so without calling attention to his failure to testify on oath, the remarks and the instruction above quoted clearly went beyond that. The prosecuting attorney said to the jury that the defendant had submitted himself to the court, *not strictly as a witness because he was not sworn,* which is the same as saying that he was not sworn as a witness. And he further said: "this man by going on the stand without taking an oath   *   *   *   but had be gone on the stand and taken an oath"; thus indicating that he might have gone on the stand and taken an oath as a witness, and had failed to do so. Such remarks not only tended to discredit the statement because not on oath, but to cast suspicion upon him, and cause an unfavorable inference to be drawn from the fact that he had not offered himself as a sworn witness; and to that extent tended to withdraw from the jury, or lessen the effect, of the presumption of innocence to which he was entitled in the consideration of the evidence. And the same is true of the instruction aforesaid, especially those parts declaring that the defendant is not required to testify but may do so if he desires, that if he elects to be sworn and testify in his own behalf he may be cross-examined and is sub-

ject to all the pains and penalities of perjury or false swearing, and *"if as in this case the defendant does not take the oath of a witness, and is not sworn to testify"*; but makes a statement, etc. It was error to give that instruction, as well as to overrule defendant's objections to the remarks aforesaid of the prosecuting attorney. (People v. Watson, 216 N. Y. 565; 111 N. E. 243; People v. Minkowitz, 220 N. Y. 399; 115 N. E. 987; Baker v. People, 105 Ill. 452; People v. Mitchell, 164 Mich. 583; 129 N. W. 698; People v. Cuff, 122 Cal. 589, 55 Pac. 407; People v. Carroll, 20 Cal. App. 41, 128 Pac. 4; State v. Holmes, 65 Minn. 230; 68 N. W. 11; State v. Richman, 143 Minn. 314, 173 N. W. 718; Parker v. State, 83 (Tex. Cr. App.) 73; 201 S. W. 173; State v. Hudspeth, 150 Mo. 12; 51 S. W. 483.) And there can be no doubt that the error was prejudicial in this case.

At the conclusion of the evidence for the prosecution the defendant offered only his own statement and with that rested his case. Thereupon one Backland was offered as a witness by the prosecution and over repeated objections, which were overruled, he was permitted to testify that as deputy warden of the State Prison of Minnesota he had seen the defendant in that institution as a prisoner. Exceptions were taken to the rulings upon said objections and were duly preserved and are duly presented here. The objections were that the testimony was incompetent and irrelevant and did not tend to prove or disprove any issue in the case. Motions were also made to strike out the several answers of the witness stating said facts, and they were overruled and exceptions taken, and those exceptions duly preserved are presented here with the others relating to said testimony. It was error to admit that evidence for at least two reasons. First, the defendant's character had not been put in issue, and his statement was not impeachable. It might be contradicted by other witnesses as to facts narrated by him under and subject to the rules applicable to the contradiction of testimony of witnesses for the defense, but is not open to impeachment either as to his veracity, or

by proof of general bad character or conviction of a crime
even where that is allowed in the case of a sworn witness.
(People v. Thomas, 9 Mich. 314; Gale v. People, 26 Mich.
157; Chappell v. State, 71 Ala. 322; Doyle v. State, 77 Ga.
513; Miller v. State, 15 Fla. 577; Hawkins v. State, 29 Fla.
554; 10 So. 822; Ortiz v. State, 30 Fla. 256; 11 So. 611;
I. Thompson on Trials, 2nd Ed. § 664.)

The Michigan statute expressly permitted cross-examina-
tion upon the statement, and in a learned discussion of the
nature of such a statement it was said by Mr. Justice Camp-
bell in People v. Thomas, supra: "I think the statute of
1861, when it permits a statement to be made, is best recon-
ciled with the Constitution by construing such a statement
to be a narrative of such facts as a prisoner may see fit to
state. A cross-examination on such a statement would not,
therefore, be allowed to go beyond it. It could not proper-
ly extend over the entire issue, as it might if he were a gen-
eral witness, *neither could it go into any of the collateral
inquiries whereby a witness' credit or memory is sometimes
tested.*" And it was later held, in Gale v. People, supra, the
opinion being delivered by Judge Cooley, that it was error
to permit the defendant when making his statement to be
asked by the prosecution whether he had not at one time
been arrested on a charge of murder, and at others also
been arrested, and at others still been put in jail; and that
the error was not cured by the court informing him that it
was his privilege to answer or to decline to answer, just as
he saw fit. And the rule above quoted from People v.
Thomas forbidding the testing of the credit or memory of
the defendant by collateral inquiries such as allowed in case
of a general witness was again stated.

Under the Alabama statute cross-examination was not
allowed, and it was held in Chappell v. State, supra, that
the defendant "can not be impeached, as witnesses are, by
proof of bad character, by cross-examination, nor by any
other proof of extrinsic facts, introduced for such pur-
poses." The Georgia case of Doyle v. State, supra, is to the

same effect; and that is also the rule in Florida (see cases above cited), although in that state the statement is made upon oath, but the accused is held not to be a witness in the strict sense and not subject to cross-examination or the rules applicable to witnesses.

The second reason is that the evidence was inadmissible for the reason that it would not have been competent even if the defendant had testified as a witness on oath, and assuming that impeachment of a witness by independent proof of general bad character or previous conviction of crime is allowable. We do not recall any decision of this court determining the latter question. It was referred to in Eads v. State, 17 Wyo. 490, 101 Pac. 946, in which case it was said by Justice Scott, in the course of the opinion, that the question as to whether impeachment of a witness may extend to general bad character or must be confined to truth and veracity had not been regulated by statute or judicially determined in this jurisdiction, and that it was not deemed necessary to decide the question in that case. It was further said, however, that evidence to be competent and relevant to discredit a witness should at least tend to prove moral turpitude or a lack of veracity. But where his conviction of crime may be shown to affect the credibility of a witness, and that is the only competent purpose for showing that he has been in prison, the fact may properly be shown only by cross-examination or by production of the record of conviction; and oral testimony, if objected to, except on admission by the witness on cross-examination, is not admissible to prove it. (5 Jones Commentaries on Ev. § 839 (841); 40 Cyc. 2640; 1 Wharton's Cr. Ev. 10th Ed. § 489; 1 Thomp. on Tr. 2nd Ed. § 643; 2 Wigmore on Ev. §§ 979, 980, 1270; 30 Am. & Eng. Ency. L., 2nd Ed. 1085, 1086; Wilbur v. Flood, 16 Mich. 40; Driscoll v. People, (Mich.) 11 N. W. 221; Stephens' Dig. Ev. (Berry) 907; Hall v. Brown, 30 Conn. 551; People v. Reinhart, 39 Cal. 449; State v. Douglas, 81 Mo. 231; U. S. v. Biebusch, 1 Fed. 213; Bartholomew v. People, 104 Ill. 601, 44 Am. Rep. 97.)

The theory upon which it is allowed on cross-examination to ask the witness if he has not been in state prison or the penitentiary is that confinement in such an institution, when admitted by the witness, presupposes a conviction by authority of law. (5 Jones Comm. on Ev. § 839 (841); Clemens v. Conrad, 19 Mich. 170.) Judge Cooley, in the case cited, said: "We think the reasons for requiring record evidence of conviction have very little application to a case where the party convicted is himself upon the stand and is questioned concerning it, with a view to sifting his character upon cross-examination. The danger that he will falsely testify to a conviction which never took place, or that he may be mistaken about it, is so slight that it may almost be looked upon as purely imaginary, while the danger that worthless characters will unexpectedly be placed upon the stand, with no opportunity for the opposite party to produce the record evidence of their infamy, is always palpable and imminent."

The rule requiring record proof to discredit a witness when the fact is sought to be shown by independent evidence is the natural and reasonable outgrowth of the rule which required such proof to show the incompetency of a witness at common law upon an objection that he had been convicted of an infamous offense. The principle is so well stated and explained in the Illinois case of Bartholomew v. People, supra, where the facts were similar to those in this case, but much stronger, that we will conclude the discussion of the question by quoting at some length from the opinion in that case. The defendant in that case was sworn and examined as a witness, and denied repeatedly that he had been confined in the penitentiary. The prosecution, afterwards, introduced as a witness the receiving and discharging clerk of the penitentiary at Joliet, whom the court permitted to testify over defendant's objection, that he had seen the defendant in said penitentiary, suffering punishment as a convict under two different judgments of conviction; and the witness was allowed to produce and read, over

objection, the *mittimuses* under which, he testified, the defendant had been each time received into the penitentiary as a convict.  He was also allowed to produce and read, over objection, a statement made by the officers in charge of the penitentiary, as, the witness said, when the defendant was each time received into the penitentiary, which gave the date received, registered number, name, *alias,* the crime for which sent, term of imprisonment, age, personal description, etc.  The court, holding the admission of the testimony to be error, said, among other things:

''At common law, conviction of an infamous offense excluded the party from being a witness, but now he may testify notwithstanding such conviction,—i. e., of an infamous offence; but (by statute) the fact of such conviction—i. e., of an infamous offence—may be shown for the purpose of affecting his credibility.  It could not have been designed to have allowed proof of a conviction for an offence, not legally presumed to affect his credibility, to be given in evidence.  It is to be noted, it is the conviction, not the punishment, for the offence, that may be shown, for the purpose of affecting credibility,—and this was the proof required at common law to exclude the witness: 'It is,' says Greenleaf's Evidence, Sec. 375, 'the *judgment,* and that only, which is received as the legal and conclusive evidence of the party's guilt, for the purpose of rendering him incompetent to testify.  *  *  *  And the judgment itself, when offered against his admissibility, can be proved only by the record, or, in proper cases, by an authenticated copy, which the objector must offer and produce at the time when the witness is about to be sworn, or at farthest in the course of the trial.'  *  *  *  The statute only requires a certified copy of the judgment—not a copy of the record of conviction,—to be delivered to the sheriff or other proper officer of the county, as his authority for taking a convict and delivering him to the warden of the penitentiary.  This is not made evidence of the conviction of the defendant generally, but is simply designed as a protection to the officers receiv-

ing the party, and detaining him, and as to them, and for that act, is doubtless, sufficient evidence of his conviction. *But they who undertake to discredit a party because of his conviction of an infamous crime, must make legal proof of that fact,*—not merely of authority to detain in the penitentiary; *and, in our opinion, no such proof was made.* * * * It was as essential to the theory of the law admitting plaintiff in error to testify, that his evidence should not be improperly impeached or discredited, as that the evidence of any other witness should not be thus discredited. It is quite true, the jury might not have decided differently from what they did if this evidence had been excluded; but they might have done so, and plaintiff in error was entitled to that chance.''

Exception was taken to a remark of the court when the defendant was making his statement. The defendant had related what he claimed to be the facts of the transaction between Williams and himself, without admitting any of the alleged false pretenses, but denying them either substantially or directly, and was proceeding to state what he did and was proposing to do upon hearing that Williams had become dissatisfied with his purchase of the shares of stock aforesaid. He stated in substance that he then attempted to see Williams to ascertain if he was dissatisfied, and failing in that, Mr. Phelps, his attorney in this case, wrote to Williams that if he wanted his money back from the company and his notes, to ''kindly let us know and we will see that he gets it;'' that Williams did not reply, and he, the defendant, went several times to Glenrock to see him and he was not in, but finally saw him and asked him ''what he wanted to do, if he wanted his money back from our company, we want to know about it, because we want to recall the stock then and return his notes and declare it off.'' At that point he was interrupted by the court saying to the jury:

''Gentlemen of the jury, any attempt on the part of the

defendant to settle this matter or to return the money or the notes is no defense at all.''

It will be observed that the defendant referred in his statement, and the court in his remark, to the proposed return of ''notes,'' which may have included a note or notes passing between the parties in a previous transaction not involved in this case, for it appears from the testimony of Dr. Williams, the prosecuting witness, that in June, preceding by several months the date of the transaction out of which this prosecution arose, he had purchased other shares in said company, and there is some intimation in his testimony that another prosecution was pending growing out of that transaction. That may not be material, and is here mentioned only as a possible explanation of a reference by the defendant and the court to ''notes,'' when but one note is charged or shown in this case to have been received by the defendant.

We think the court's said remarks were improper and may have been prejudicial. The ''matter'' involved was the question of defendant's guilt of the crime charged, and the remark that any attempt to settle ''this matter'' is no defense could only have been understood, if given any effect, as meaning that any attempt to settle the crime charged against him, or at least to avoid a prosecution for the crime, is no defense. However true that may be as a legal proposition it should not have been stated at the time the remark was made. Assuming that when charging the jury upon the law of the case the court might properly have instructed them to the effect that if they should find that the crime charged had been committed by defendant, any attempt thereafter to return the note and check or the money would not be a good defense, the remarks were not limited by telling the jury that it was for them to determine whether the crime charged had been committed. On the contrary, though we do not suppose it was so intended, they might be taken as an intimation that in the mind of the court the crime had been proven against the defendant and that his

statement of the facts of the transaction was not entitled to credit, or was not sufficient to disprove the evidence for the prosecution. Aside from the embarassment the remarks may naturally have caused the defendant in completing his statement they tended to discredit what he had said as well as what he might say thereafter. And the error was not cured, in our opinion, by the instruction given with the other instructions in the case, that it was for the jury to say how much weight they will place upon the statement of the defendant, as well as the testimony of the witnesses in the case, that they are to consider the ''unsworn statement'' of the defendant and give it such credit as ''under the facts in this case'' they think it entitled, and that they must not lay it aside without reason, but must consider it and determine its truth or falsity ''in the light of all the facts and circumstances which have appeared upon the trial.''

As the case must be remanded for a new trial for the errors above pointed out, we refrain from considering the question of the sufficiency of the evidence to sustain the verdict or the other questions presented by the briefs not above considered. It would be improper to consider some of such questions and it is unnecessary to consider others based upon matters which may not occur upon another trial. The judgment will be reversed and the cause remanded for a new trial.

BLYDENBURGH and KIMBALL, JJ., concur.