**Donald Raymond MARTIN,
Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. 88–155.**

Supreme Court of Wyoming.

Oct. 11, 1989.

Wyoming Public Defender Program: Leonard D. Munker, State Public Defender, for appellant.

Donald Raymond Martin, pro se.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Karen A. Byrne, Gerald P. Luckhaupt, Asst. Attys. Gen., for appellee.

Before CARDINE, C.J., and
THOMAS, URBIGKIT, MACY and
GOLDEN, JJ.

THOMAS, Justice.

The essential concern of the court, in this case, is with the effective assistance of counsel in a post-conviction proceeding conducted pursuant to the provisions of §§ 7–

14–101 to 7–14–108, W.S.1977 (June 1987 Repl.). This issue is invoked by the *pro se* brief of the appellant. Woven into the question of effective representation is the validity of Donald R. Martin's plea of *nolo contendere* pursuant to which he was sentenced to the state penitentiary. Dependant upon the propriety of that plea, as a knowing and voluntary admission of guilt, is the resolution of whether the district court properly dismissed the petition for post-conviction relief for failure to state a claim. We hold that Martin's plea of *nolo contendere* was a knowing and voluntary plea; the effect of that plea is to waive all defenses to the charge other than a claim that the court lacked jurisdiction; the record presents no suggestion of any facts that would support a conclusion that the court was without jurisdiction; and the record does not disclose any failure of counsel under these circumstances. Consequently, we affirm the Order Denying Post–Conviction Relief entered by the district court in this case.

In the brief filed by counsel appointed to represent Martin, six issues are articulated as follows:

"1. Do *Alberts, Long,* and *Fondren* dictate that counsel must be appointed upon demand where a request is made but before the petitioner files his claim for post-conviction relief?

"2. What is the district court's responsibility in deciding to appoint counsel?

"3. What is counsel's responsibility after the appointment?

"4. Does a post-conviction claim require that the court make an evaluation of its meritorious or frivolous nature?

"5. How should the trial court treat the record of the proceedings where a guilty plea or *nolo contendere* plea has been accepted pursuant to Rule 15, W.R. Cr.P.?

"6. What is the applicable standard for review on appeal?"

In the *pro se* brief of the appellant, this statement of issues appears:

"Whether there was ineffective Assistance of Counsel.

"Whether the trial court was in violation of the Fifth and Fourteenth Amendments to The United States Constitution."

The only issue stated in the brief of appellee is:

"I. Was the petition properly dismissed for failure to state a claim upon which relief may be granted?"

The brief of appellant filed by appointed counsel contains a lengthy dissertation with respect to the propriety of appointing counsel in the post-conviction proceeding in an instance such as this. While that question is not without interest, we do not perceive that it should be addressed in this case because the fact is that the district court did appoint counsel to represent Martin. The State has not appealed that ruling, and the question simply is not present in this case.

Martin was charged with obtaining $1,247.05 from two people in Lyman by false pretenses and with intent to defraud in violation of § 6–3–407(a)(i), W.S.1977.[1] It appears that they agreed to pay him that money to refinish an antique "player piano." The money was paid in advance, and Martin then picked up the piano. Martin, the piano, and the cash all disappeared. Martin later was apprehended. The piano was returned with no work done upon it. The money paid was not recovered.

Martin was bound over to the district court following a preliminary examination and, at his arraignment, he entered a plea of "Not Guilty." He was again before the court for a potential change of plea some two and one-half months later but, after reporting extensive plea negotiations with the prosecuting attorney, counsel for Martin advised the court that Martin wished to persist in the plea of not guilty. A little more than a month after that, Martin again

---

1. Section 6–3–407(a)(i), W.S.1977, provides:

"(a) A person who knowingly obtains property from another person by false pretenses with intent to defraud the person is guilty of:

"A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both, if the value of the property is five hundred dollars ($500.00) or more; * * *."

appeared in court with his counsel and, at the conclusion of some rather lengthy proceedings during which the court explored a possible claim of deprivation of the constitutional right to a speedy trial and a claim of excessive bail, the following appears of record:

"THE COURT: * * * How do you plead to that, Mr. Martin?

"DEFENDANT MARTIN: I plead *nolo contendere.*"

Although not required to, the district court then proceeded to establish a factual basis for Martin's plea.

At the initial arraignment, and also at the change of plea hearing, the district court strictly complied with the requirements of Rule 15(c), W.R.Cr.P. It is clear that the court advised Martin of the nature of the charge to which the plea would be offered and the maximum possible penalty provided by law. Martin, who was represented by an attorney, was advised that he had the right to plead not guilty and to persist in that plea. His right to a trial by jury, and to the assistance of counsel at that trial, was explained to him. He understood that he had the right to confront and cross-examine adverse witnesses and, further, had the right not to be compelled to incriminate himself. Additional explanation was made of the fact that, if he should plead guilty or *nolo contendere*, there would be no trial and that, by such a plea, he waived his right to a trial. He was also informed that, if he should plead either guilty or *nolo contendere*, the court would be entitled to ask him questions about the offense to which he had pleaded and that the possibility of prosecution for perjury existed if he answered those questions falsely while under oath. The court, in accordance with Rule 15(d), W.R.Cr.P., addressed Martin personally in open court and determined that his plea was voluntary. The nature of the plea agreement process between the State and Martin was fully explored in accordance with Rule 15(e), W.R.Cr.P. The court went to some pains to expand upon the requirements of Rule 15, W.R.Cr.P., and explained to Martin those rights that he would be waiving by a plea of guilty or *nolo contendere*.

The court also explored Martin's health problems, relating to a heart condition that had manifested itself during confinement, and explained that his condition would have to be treated at the penitentiary if he were incarcerated.

After all of this, Martin advised the court that he was pleading *nolo contendere* of his own free will and that the plea was what he wanted to do. The court specifically asked him if he was entering that plea because he felt forced to do so. Martin replied in the negative. From an examination of the entire record, there appears to be no basis to question the proposition that Martin's plea of *nolo contendere* was voluntarily and knowingly entered. *Gist v. State*, 768 P.2d 1054 (Wyo.1989).

This court has ruled that a plea of *nolo contendere*, within the criminal context, is the same as a plea of guilty. *State v. Steele*, 620 P.2d 1026 (Wyo.1980); followed in *Keller v. State*, 723 P.2d 1244 (Wyo.1986). If the plea of *nolo contendere* is treated as the substantial equivalent of a plea of guilty, it must follow that the effect of that plea is to waive all "nonjurisdictional" claims. *Sword v. State*, 746 P.2d 423 (Wyo.1987), citing *Vallo v. State*, 726 P.2d 1045 (Wyo.1986); and *Tompkins v. State*, 705 P.2d 836 (Wyo.1985), cert. denied 475 U.S. 1052, 106 S.Ct. 1277, 89 L.Ed.2d 585 (1986). Cf. *Armijo v. State*, 678 P.2d 864 (Wyo.1984).

This brings us to Martin's effort to seek post-conviction relief. Martin initially filed a motion for the appointment of counsel. Although there was no petition for post-conviction relief filed, the court appointed counsel to represent Martin. While the question of whether a proper proceeding had been initiated was being debated, Martin did file a *pro se* petition for post-conviction relief. In his petition, he contended that he had been denied due process under the Fifth and Fourteenth Amendments to the Constitution of the United States because:

1. He did not receive a quick and speedy trial;

2. The State's filing, in the County Court, of three separate complaints with three separate charges represented prosecutorial misconduct and harassment;

3. The State refused to permit Donald R. Martin to take a polygraph test which would constitute exculpatory evidence;

4. The Court refused to set bail in an amount that defendant Donald R. Martin could make;

5. The defendant, Donald R. Martin, had been subjected to cruel and unusual punishment by being kept in the Uinta County Jail, and ultimately placed in the penitentiary, despite the fact that he had experienced a severe heart attack;

6. The State used the fact that he had contested extradition to justify its argument for a high bond and its prosecution on a criminal matter that should have been resolved more appropriately as a civil matter.

No additional claims of any constitutional bases for post-conviction relief were presented by counsel although counsel did brief the law with respect to the claims which Martin had asserted.

Subsequently, Martin filed a *pro se* response, supplemental to the one filed by counsel, to the State's motion to dismiss. In that document, he restated his claims relating to the filing of three separate complaints; his polygraph question; a denial of reasonable bail; and his subjection to cruel and unusual punishment. In addition, he complained that: his plea of *nolo contendere* had been coerced; he was not advised that he could have a direct appeal, and that both court and counsel failed in that regard; his plea was coerced; he was not allowed to withdraw his plea in accordance with Rule 30, W.R.Cr.P.;[2] papers he had prepared were filed but not presented to the court; certain motions were never presented; he had difficulty getting papers notarized or copied; he was moved between the jail in Lincoln County and the jail in Uinta County and, therefore, rendered unavailable for court appearance; and that he

was denied his constitutional rights in general. Ultimately, the district court entered its Order Denying Post–Conviction Relief. The appeal in this case is taken from that order.

■ The substance of Martin's claims for post-conviction relief can be addressed concisely. None of those which relate to matters prior to his entry of *nolo contendere* raise any jurisdictional defects. Consequently, under the law pronounced in *Sword*, 746 P.2d 423, these contentions are waived. Some of them relate to his sentence. These do not lead to a viable claim for relief in post-conviction proceedings. *Sanchez v. State*, 755 P.2d 245 (Wyo.1988); *Whitney v. State*, 745 P.2d 902 (Wyo.1987). Furthermore, there is nothing to suggest that the failure to raise these issues by a direct appeal would survive the requirements articulated in *Cutbirth v. State*, 751 P.2d 1257 (Wyo.1988). In that case, we explained clearly that a convicted party is foreclosed from raising, in a post-conviction proceeding, any claims of error that could, or should, have been presented on direct appeal unless he demonstrates good cause for his failure to do so and that he suffers actual prejudice as a result.

The careful and thorough work of counsel appointed in connection with Martin's prosecution is evidenced by the record. The arraignment proceedings and the proceedings at the change of plea hearing speak for themselves in terms of the thoroughness with which the trial court pursued the case. On this record, there was no viable claim for post-conviction relief available to Martin so far as counsel was able to discern or so far as Martin was able to articulate.

■ Given the circumstances of this case, in which any possible claims for post-conviction relief were foreclosed as a matter of law, Martin's claim that he was denied effective assistance of counsel in the post-conviction proceeding has no merit. Nothing in the record suggests that counsel was not faithful in attempting to iden-

---

**2.** The appropriate rule regarding this issue is Rule 33(d), W.R.Cr.P., *Withdrawal of plea of* *guilty or nolo contendere.*

tify some valid ground for post-conviction relief. The record does offer assurance that counsel also was faithful to the professional duty owed to the court. The applicable law was evaluated and correctly reported to the trial court. When a case such as this has been appropriately pursued and disposed of by a plea of guilty or *nolo contendere,* the process should lead to an absence of claims for post-conviction relief. That is why we have insisted upon strict compliance with Rule 15, W.R.Cr.P. That is what occurred in this case and, in such an instance, the claim of lack of effective assistance of counsel in connection with the post-conviction proceeding simply fails. When there is nothing that can be accomplished, effectiveness of counsel is not an issue.

The Order Denying Post–Conviction Relief is affirmed.

URBIGKIT, Justice, dissenting.

At first glance, this case appears but a new pearl for the *Cutbirth* [1] necklace of cases [2] where those who can afford private attorneys explain through prison bars to those who cannot that "the simple failure [by their appointed counsel] to raise certain issues on appeal, even if they were meritorious, does not require a conclusion of ineffective assistance of counsel." [3] But the State reports Donald Martin to have a "borderline retarded intelligence" and to be too poor to afford an attorney.[4] Demand-

ing Martin make his claims in legal terms after denying him the services of an attorney must make this case so exceptional even our standard *Cutbirth* explanation to the poor will not suffice. Martin had tuned pianos for a living and articulating legal arguments is no job for someone unable to feel his way through our judicial hall-of-mirrors. We are capable of better than lockstep jurisprudence. I dissent.

The public defender was appointed by the district court and paid by the State to represent Donald R. Martin (Martin). The public defender displayed absolutely no loyalty to his client; [5] in fact, he argued against the interests of his client to the district court and to this court. There is a ready argument to support the claim that evidence in the record is insufficient to support a charge requiring an intent to defraud; although this may simply support my claim that Martin had, at best, an attorney in name only and, at worst, an attorney in sheep's clothing.

Finally, the working assumption by the majority that the difference between a plea of nolo contendere and a plea of guilty is without distinction seems an indefensible claim under W.R.Cr.P. 15, the Wyoming Constitution and the Fourteenth Amendment to the United States Constitution.

Profoundly disturbing to me is the behavior of the public defender appointed by the district court to represent Martin. His behavior raises fundamental questions

---

1. *Cutbirth v. State,* 751 P.2d 1257 (Wyo.1988).

2. *Murray v. State,* 776 P.2d 206 (Wyo.1989); *Kallas v. State,* 776 P.2d 198 (Wyo.1989); *Amin v. State,* 774 P.2d 597 (Wyo.1989); *Cutbirth,* 751 P.2d 1257.

3. *Cutbirth,* 751 P.2d at 1263. Not only do such failures merit no conclusion that the appointed attorney was ineffective, they do not even establish a rebuttable presumption that the appointed attorney was ineffective. The penniless prisoner is told *to prove* the appointed attorney's performance was *so* bad that the same judges looking over his case during post-conviction relief would have been unable to give the prisoner a fair review during appeal before they affirmed his conviction. This is what *Cutbirth* calls ineffectiveness to the point of prejudice.

For prejudice to be inherent, the attorney must *literally sleep* "through a substantial por-

tion of the trial." *Javor v. United States,* 724 F.2d 831, 833 (9th Cir.1984).

4. Apparently as a joke, four attorneys were initially appointed by the court to represent Martin. *See* n. 12, *infra.*

5. The public defender has encountered this problem before:

A defense attorney who abandons his duty of loyalty to his client and effectively joins the state in an effort to attain a conviction or death sentence suffers from an obvious conflict of interest. Such an attorney, like unwanted counsel, "'represents' the defendant only through a tenuous and unacceptable legal fiction."

*Osborn v. Shillinger,* 861 F.2d 612, 629 (10th Cir.1988) (quoting *Faretta v. California,* 422 U.S. 806, 821, 95 S.Ct. 2525, 2534, 45 L.Ed.2d 562 (1975)).

about which ethical responsibilities attach to the relationship between an appointed attorney and an indigent client. A thumbnail sketch now of the "professional services" Martin received at the hands of the public defender lays out why I claim Martin had no attorney.

The public defender, early on, wrote his "borderline retarded" client to inform him there was "no way for the Court or [the public defender] to guess what the grounds for relief could be unless stated by" the prisoner and it "would be helpful if [he] could tailor a petition for relief in [his] sentencing court along the lines set out in the form used by the United States District Court." After spelling out his demands to this borderline retarded and indigent prisoner, the public defender announced, *"In the event that you can state a sufficient basis for relief, then an effort will be made to give you further assistance and pursue the matter before the sentencing court."* (Emphasis added.)

Later, the public defender dispatched an ex parte letter to the district judge but *sent no copy to his "client".* Normally, one would not rush to describe such an action as an attorney's good faith effort to provide a client with "further assistance."[6] The ex parte letter to the district judge stated, in part:

I take issue with the appointment of counsel in this case because after having reviewed the record, I think the issues are frivolous and your first order in this case indicates that you feel the same. * * *

\* \* \* \* \* \*

*Letters from my client indicate that he would like to know my plan of ac-*

*tion.* \* \* \* I have reviewed all of the court hearings and I am forwarding those hearings, which reflect all of his issues and your rulings, to Mr. Martin so that he can amend or supplement the record. *I have also filed a motion for an extension of time so that he might do that if he wishes, pro se.*

Although *the memorandum and previous brief were submitted in apparent disagreement with* your original order and *my client's wishes* it was done so with a deep concern about the matter. (Emphasis added.)

The history of this case begins in Green River, Wyoming where Martin repaired and tuned pianos. In the fall of 1985, he agreed to recondition an antique player piano owned by a Bridger Valley family. The family delivered the piano to Martin and gave him three cash advances totaling $1,248.05.[7] Soon after, Martin moved his piano business to Greeley, Colorado and took with him the unrepaired piano. His explanation for the delay in completing the repairs was the required antique player piano repair parts remained unavailable.[8] The customer filed a criminal complaint. Martin was arrested in Colorado on February 26, 1986 for the offense of conversion by bailee of the piano. The piano was returned when Martin was extradited.

In quick order, the conversion by bailee charge was reformed to a charge of converting the advanced funds; the prosecutor filed a final charge of obtaining the $1,247.05[9] with intent to defraud under W.S. 6–3–407(a)(i). The "borderline retarded" Martin now found himself charged with intentionally defrauding the Bridger Valley family. Little did he realize to fight

---

**6.** If this kind of behavior by an attorney is acceptable to this court, then we certainly demand much more from the medical profession, *Roybal v. Bell,* 778 P.2d 108 (Wyo.1989), than we demand from the attorneys we supervise, *Meyer v. Norman,* 780 P.2d 283 (Wyo.1989).

**7.** *See* n. 22, *infra.*

**8.** Within the status of this case where "facts" and "evidence" are de minimis, it is possible to find one factual controversy. In an affidavit attached to the original complaint, there was

hearsay information obtained by the investigator that the parts had never been ordered. Martin contended in communications in the record that his invoices, which were mailed to him after arrest and confinement, had been removed by someone so that he only received the empty and previously opened envelope and the documents had disappeared. Development of the issue of validating evidence by either party did not occur within this record.

**9.** *See* n. 22, *infra.*

those charges all the way to this high court, he would have to find within himself the talent and resources to formulate his legal arguments in legal terms. Bond was set too high [10] for Martin to remain free pending his trial and he remained confined from the time of his arrest on February 26, 1986. He entered his plea of nolo contendere on October 2, 1986. On November 26, 1986, he was sentenced to three-to-seven years confinement with credit for the nine months he had already spent in confinement.[11]

The information was filed in the district court on May 28, 1986 and arraignment occurred on June 3 when Martin plead not guilty. Ten days were granted for defense counsel to negotiate a plea and file motions. A change of plea hearing was scheduled for July 30. But on July 25, Martin suffered a severe heart attack while imprisoned in the Uinta County jail. He reappeared in district court on August 20 to reaffirm his innocence but was denied any bond reduction and remained confined. Apparently at this time, he rejected a possible plea bargain of two-to-nine years with credit for time served.

On September 5, counsel filed a motion for a bill of particulars for production, a motion in limine, a W.R.E. 404(b) determination, a motion to dismiss, a polygraph test, and a motion for bail reduction. On September 30, Martin filed a pro se handwritten habeas corpus motion for release because he had been jailed eighty-eight days beyond the 120 days allowed to bring a defendant to trial after an information or indictment has been filed. Rule 204, Uniform Rules for the District Courts of the State of Wyoming (Rule 204).

A hearing scheduled for September 25 was postponed when Martin was again hospitalized because of his heart condition. The hearing reconvened on October 2 when a speedy trial dismissal was rejected by the district court. A nolo contendere plea pursuant to a plea bargain was entered, although the record makes clear the district court knew that Martin continued to assert his innocence of the charged crime.

THE COURT: Now, I want to interject because Mr. Martin talked aloud enough during the conference with you, Mr. Thomas, for the Court to hear. And the Court would say marvelous, first of all; and secondly, the Court would say that Mr. Martin told this Court that he recognized that he waived his right to defend himself on the charges when he plead nolo contendere. In other words, Mr. Martin, you gave up the right to contest the evidence that Mr. Anderson presented as being the State's side of the case and you gave up your right to tell your side of the story, to defend yourself on the charges. And what you were doing, when you were talking to your attorney, is defending yourself. And when your attorney stands up to cross-examine in this matter, the thrust of his cross-examination is to pick holes in the State's case and to defend you.

Now, that's not the purpose that the Court has required the State to present this evidence. The purpose for which the Court had in mind was to make sure that this wasn't a frivolous prosecution and unsubstantiated charge. The purpose was is [sic] to make sure that there was—that the State presented its side of the case because your side of the case becomes irrelevant when you plead nolo contendere and the only thing that becomes relevant at that point is whether or not there's some substantiation for what the Court has done or not done.

Now, I want that in the record and that's why I interrupted, Mr. Thomas. Nevertheless, you may proceed with the cross-examination.

On February 11, 1987, through counsel, Martin's motion for sentence reduction was again denied. On December 2, 1987, Mar-

---

**10.** Martin had an indigent wife who had just had a baby.

**11.** Actually, although the information was not relayed by counsel or included in the briefing or oral argument, Martin was released on parole in August 1988, which was substantially in advance of oral argument on October 13, 1988. Had he been informed, he could have appeared for oral argument since he was no longer confined at the Wyoming State Penitentiary.

tin filed a motion for appointment of counsel for post-conviction relief citing this court's discussions in *Alberts v. State*, 745 P.2d 898 (Wyo.1987) and *Long v. State*, 745 P.2d 547 (Wyo.1987), accompanied by an affidavit of indigence. By order filed December 4, 1987, the district court appointed Rex O. Arney, Gary L. Yordy, David H. Carmichael as well as Leonard Munker to represent Martin for purposes of post-conviction relief, after which the appointments of Arney, Yordy and Carmichael were vacated on December 7, 1987.[12]

The State filed an opposition to the appointment of counsel on December 15, 1987. About a month later, the office of the public defender, through its director, joined to oppose the appointment of counsel as well. It was then the public defender wrote Martin:

> I am in receipt of your letter of January 11, 1988, and in reply can advise you of the following. Originally, Judge Troughton, in his Order dated December 5, 1987, appointed counsel pursuant to *Alberts v. State*, and *Long v. State;* those attorneys, in addition to myself, are:
>
> Rex. O. Arney
> Redle, Yonkee & Arney
> 319 West Dow Street
> P.O. Box 6288
> Sheridan, WY 82801–6288
> Gary L. Yordy
> Attorney at Law
> 733 Dogwood
> Cheyenne, WY 82009–1009
> David H. Carmichael
> Carmichael, McNiff & Patton
> 1920 Thomas [sic] Avenue, Suite 600
> P.O. Box 945
> Cheyenne, WY 82003–0945
>
> Thereafter on December 7, 1987, there was an Order Vacating Appointment of

Counsel, which included Rex Arney, Gary Yordy and David Carmichael. That Order did not refer to me for the reason that the appointment of counsel, pursuant to the statute in light of the *Alberts* and *Long* cases, is limited to my office.

> I then filed with the Court a Motion for Reconsideration Regarding Post–Conviction Procedure that was utilized by Judge Troughton. A copy of that was sent to you on January 8, 1988. The reason for that Motion was the noncompliance of the statutes and rules for the filing of a petition for post-conviction relief and the request for counsel. I am forwarding to you an approved form utilized in the United States District Court for the District of Wyoming. It would be helpful if you could tailor a petition for relief in your sentencing court along the lines set out in the form used by the United States District Court. Until such a petition is filed of record and served upon the respondent Attorney General of this State, this office will take no further action until ordered by the Court. There is no way for the Court or myself to guess what the grounds for relief could be unless stated by you. In the event that you can state a sufficient basis for relief, then an effort will be made to give you further assistance and pursue the matter before the sentencing court.

This demonstrates the standard of legal care this court tolerates when provided by an appointed attorney—for a "borderline retarded," indigent prisoner.

The district court entered an order for additional briefing on the right to counsel on January 22, 1988. On the same day, Martin filed a pleading pro se to which he attached his previous motion for appointment of counsel. On the issue of appointment of counsel, the State and the public defender filed required briefs.[13]

---

12. Senator Rex Arney was chairman of the Senate Judiciary Committee of the Wyoming State Legislature. Representative Gary Yordy was a member of the House and also an active participant as a member of the Judiciary Committee. At that time, David Carmichael was serving as president of the Wyoming State Bar. Clearly, the appointments were a "bad joke" by virtue of the distaste of the district court and apparently

the public defender for the appointment of counsel in post-conviction-relief cases.

13. Included in brief "in behalf" of Martin, the public defender stated:
> To begin with, the Supreme Court Opinion in *Alberts,* was dealing with a case where the Petitioner Alberts had filed with the District Court a petition for post-conviction relief.

Habeas corpus was denied on March 3, 1988 and a briefing schedule and hearing was set for post-conviction relief. On April 27, 1988, the State filed a motion to dismiss. The public defender made a less than strategic three-pronged "response." The public defender first wrote to the district judge the now infamous ex parte letter, excerpted earlier in this dissent.

I have attempted to reach you by phone on a number of occasions and have been unsuccessful.

I apologize for the delay in filing the current brief pursuant to your order of March 3rd. However, there are no amendments to the Petition, no new issues, and I have reviewed the record in a vain searching for error. If it exists, I cannot find it.

I take issue with the appointment of counsel in this case because after having reviewed the record, I think the issues are frivolous and your first order in this case indicates that you feel the same. I think that is a finding that could be made, especially in light of the new statutes regarding post conviction procedure. Had Mr. Martin contacted me initially in this ca[se], I would have advised him his claim was without merit, especially after reviewing the record.

Your appointment of counsel and order in this case reflects some disagreement with the Supreme Court rulings in *Alberts* and *Long*. Although I share your view of the court's rulings, I believe them to be untenable in view of the current state of the law, the time and expense, and the economic constraints placed on my office. It is for that reason that I suggest that you, as a trial judge, adopt the procedure employed by the federal courts in their rules that some merit must be found in the post conviction petition or a meritorious claim made before counsel is appointed. I am reluctant to see post conviction procedures revoked by the legislature, but maybe the new changes will be beneficial. However, I have a hard time adhering to the current state of affairs as set forth in a variety of Wyoming Supreme Court decisions. The delay in the filing of this memorandum is occasioned by the fact that my office is dealing with an excessive number of frivolous requests for counsel, put in motion by inmate writ writers who charge for their services and then fail to file a petition or make substantial claims as required by the Supreme Court.

Letters from my client indicate that he would like to know my plan of action. I think my memorandum is clear in that regard. His inquiries would suggest that he would like some type of hearing; that is a court decision. He would also like to be present at the hearing and that too is a court decision. I have reviewed all of the court hearings and I am forwarding those hearings, which reflect all of his issues and your rulings, to Mr. Martin so that he can amend or supplement the record. I have also filed a

The issue in the case centered around the appointment of counsel to help develop the issues, an evidentiary hearing, or briefing. The District Court disallowed the appointment of counsel and those were the basic facts before the Wyoming Supreme Court at the time of that argument. Justice Urbigkit in the Opinion indicated that counsel should be provided for the preparation of the post-conviction petition—that being dicta of the Court. Inmates at the Penitentiary promptly pumped out twenty odd requests for counsel to prepare petitions on demand. The office obligated with the choice of feeding the District Court and ultimately the Wyoming Supreme Court a menu of post-conviction petitions was the Public Defender's Office. There exists no other authority for this procedure other than the statements found in the *Alberts* opinion. It may be the client's decision to press a

particular contention on appeal, but when counsel is asked by a client of his estimate of the merits of his case on appeal, professional duty requires an honest response. The attorney can state to the client the probable outcome, but the Defendant has no constitutional right to compel an appointed attorney to press frivolous or non-frivolous points requested by a client.

As a fact, this writer did not author *Alberts,* 745 P.2d 898. Writing the majority opinion was Justice Macy. In *Long,* 745 P.2d 547, which was authored by this writer, the counsel appointment request had accompanied a filed petition for post-conviction relief. *See also Fondren v. State,* 749 P.2d 767 (Wyo.1988). This egregious mistake, repeated in appellate brief, adds little challenge to acceptability of the contentions made as to why the attorney should not "represent" his appointed client.

motion for an extension of time so that he might do that if he wishes, pro se.

Although the memorandum and previous brief were submitted in apparent disagreement with your original order and my client's wishes, it was done so with a deep concern about the matter.

That was but the first prong in the public defender's strategy to represent Martin. The second and third prongs consisted of a motion for an extension of time to permit Martin to proceed pro se to amend and a five-page pleading entitled "Response to Court Order Filed March 3, 1988 Subject: Paragraph Four." Most of this pleading was exploited by the public defender to broadcast his opposition to being appointed public defender for Martin, keeping in mind a private attorney would only have been responding to the State's motion to dismiss. Following his prolonged objection to being appointed counsel for Martin, the public defender finally found time to give his professional opinion on the merits of Martin's claims:

> Having reviewed the record, there appears to be no issue raised by Donald R. Martin that would require an evidentiary hearing or that could not be resolved without the present record now before the court.

> The Petitioner, Donald R. Martin, having had access to the court, having had his file reviewed by counsel and the court, the argument is whether counsel was necessary to begin with and it is this attorney's opinion that counsel was not necessary in the instant case. Mr. Martin's rights and interests were fully protected without counsel, and counsel's only role or function in this case was to agree with the arguments of the Attorney General's Office, to its acquiescence with the court's appointment of counsel, and to advise the defendant that his issues were non-meritorious. This proceeding is a discretionary proceeding.

> *The appointment of counsel has not enhanced the liberty interest of the Petitioner,* and yet the Petitioner would

have hoped that counsel's skill, judgment and diligence would result in a revocation or a setting aside his sentence and guilty plea. His rights as a matter of due process have now been protected.

> The post conviction procedure to correct an unconstitutional allegation of deprivation of liberty has been examined. The appointment of counsel in the instant case was again unnecessary.

> Mr. Martin's issues, raised in his post conviction petition, had been reviewed in an earlier brief, and the Attorney General has filed his response. It is unnecessary to review those allegations for a second time in this brief. Only the guilty plea itself will be re-examined.

> Within the body of the record it appears Rule 15 has been complied with; that Rule 15(b), nolo contendere, was allowed; that Rule 15(c) was complied with. It appears within the record that the court complied with Rule 15(d) regarding plea agreements and that in regard to Rule 15(e), the prosecution complied with that portion. It appears that within the record the court accepted the plea agreement. Lastly, the court determined in Rule 15(f) that there was a basis to accept the plea and that a verbatim record of the proceedings under Rule 15(g) would be made. Having now advised the defendant that his request for post conviction relief is without merit and the proceedings of the court are correct, counsel's request to be relieved is now moot, in that the issues, facts, claims and rulings can now be reviewed by the Supreme Court and such review can include the concept of miscarriage of justice or that the claim could have been made and raised in a direct appeal, and lastly, it should be determined whether or not the claim was frivolous to begin with before appointing counsel.

(Emphasis added.) That *"[t]he appointment of counsel has not enhanced the liberty interest of the Petitioner"* is beyond obvious in this case.[14]

*State v. Burgins,* 44 Ohio App.3d 158, 542 N.E.2d 707 (1988), where defense counsel in final argument stated he did not believe his client. It is

---

**14.** Counsel for defendant said he did not believe (or essentially believe in) the client for whom he was appointed. This is no different than

The public defender did not list, much less address, Martin's earlier claims. Martin's claims include that he was denied a speedy trial; no response was made to his motion for a lie detector test to prove his innocence; he was unreasonably denied affordable bail; and his medical condition was held over his head to coerce his nolo contendere plea.[15] The public defender failed to explore the possibility that the evidence in the record was insufficient to support the charge that Martin "intended" to defraud the Bridger Valley family—an obvious element in an intent to defraud charge.[16]

It should come as little surprise to learn this less than strategic three-pronged response deployed by the public defender was simply overwhelmed by the prosecutor's legal acumen and so the district court dismissed Martin's Petition for Post Conviction Relief. The order of denial was entered May 12, 1988:

> After review of the pleadings and papers filed in this case, the Court finds and concludes there has been no substantial denial of Donald R. Martin's rights under the Constitution of the United States or the State of Wyoming or both.
>
> Therefore, the relief requested in the Petition for Post Conviction Relief is denied; and the Petition is hereby dismissed.

Martin and the public defender both filed notices of appeal, accompanied by very different briefs. The public defender never discussed any substantive issue, let alone argued the merits of his "client's" appeal. Martin proceeded pro se to confront both his attorney and the attorney general. The twenty-seven-page brief from the public defender simply claimed Martin's rights were foreclosed by his nolo contendere plea and coercion was not available as a basis to attack the plea. Problems with former strategies of the public defender are not unknown.[17] No consideration was given to the question of speedy trial nor whether the actual criminal offense had even occurred. The brief also digressed to consider and pledge fidelity to *Anders v. State of California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, *reh'g denied* 388 U.S. 924, 87 S.Ct. 2094, 18 L.Ed.2d 1377 (1967). I agree the issue of appointment of counsel should not have been addressed in district court or this court since counsel had been officially appointed and the State did not appeal.

But, rather than arguing Martin's case, the public defender spent thirty minutes decrying the inconvenience of the public

---

also similar to what appointed defense counsel (a former commissioner of the Missouri Supreme Court) did in *Schlup v. State,* 771 S.W.2d 895 (Mo.App.1989) in failure to appeal a conviction for his appointed client. In both cases, ineffectiveness of counsel was readily recognized by the appellate tribunal by reversal and remand.

15. All of these contentions, except the last, had been clearly enunciated by Martin significantly in advance of the brief filing date established for May 9, 1988, except the one involving a contention of coerced plea. That contention was implicit in other materials filed in the district court by Martin discussing speedy trial, his heart condition and denied bail. By coincidence, Martin also filed a response to the State's motion to dismiss on the same day that the response document was filed by the public defender. Even a casual comparison between the material filed by Martin pro se and the public defender, who had been paid to represent Martin, reveals the public defender was not communicating with Martin on issues Martin wanted raised.

16. In *Miller v. State,* 732 P.2d 1054 (Wyo.1987), Mr. Miller had also been charged with receipt of

money under the false pretense statute. The obvious difference between Mr. Miller and Mr. Martin, aside from the fact that Mr. Miller had no "borderline retarded intelligence," was that Martin served out most of his sentence. Mr. Miller's private attorney was successful in convincing this court to reverse the conviction of his client by presenting a credible argument to support his claim. No one has even suggested by viable evidence that Martin did not "intend" to repair the piano "sometime."

The legal fiction that the imprisoned poor can reasonably be expected to prepare a worthwhile petition for post-conviction relief is a patent absurdity used to justify denial of effective court review. To say the imprisoned poor possess a working knowledge of the law is a fiction which but thinly veils our indifference to the poor or the imprisoned. The lack of legal expertise by the imprisoned poor proceeding pro se is responsible, in part, for the volumes of petitions this court receives which have little legal merit to justify the relief sought.

17. *Osborn,* 861 F.2d at 615. *See* n. 5, *supra.*

defender's office being appointed to represent the imprisoned poor in post-conviction-relief petitions.[18] He said he had no responsibility to review the record, asserting all the while his brief complied with *Anders*. He would only consider constitutional errors—which would have to dance magically atop the record—not errors suggested by a defendant with no legal training. Had the public defender reviewed the record, he might have noticed the State's report of Martin having a "borderline retarded intelligence." It could have gelled into a passing thought that Martin *was unable* to articulate his legal arguments in legal terms.

The public defender seemed not to have read the pro se brief filed by Martin. Of course, judicial etiquette would not permit Martin an invitation to appear before this court to argue the merits of his claims even though he had no one to do so. Naturally, no oral argument was provided to discuss the contentions raised by the pro se brief which included:

Whether there was Ineffective Assistance of Counsel.

Whether the trial court was in violation of the Fifth and Fourtee[n]th Amendments to The United States Constitution.

Martin's brief cited the Wyoming Rules of Professional Conduct as a standard for the duties owed a client by an attorney, including an initial personal conference between attorney and client. Martin's notion that the Wyoming Rules of Professional Conduct govern attorneys in their relations with clients is naive. But then he was unaware we had sub silentio amended that rule to read "for privately paid attorneys."

Obviously, Martin, with his modest education, was unable to make his legal claims in legal terms, except the roughly understood notions that he did not secure a speedy trial, felt coerced by his medical condition to enter a nolo contendere plea, and was innocent of intending to defraud anyone. Even a casual review of the record reveals at least an arguable speedy trial issue under the Wyoming Constitution, the United States Constitution and our current literature on the subject. *Phillips v. State*, 774 P.2d 118 (Wyo.1989); *Harvey v. State*, 774 P.2d 87 (Wyo.1989); *DeSpain v. State*, 774 P.2d 77 (Wyo.1989). The Pennsylvania Supreme Court recently and conclusively addressed a similar appellant brief where the case was remanded for appointment of another appellant counsel:

The brief submitted to this Court provides a cursory treatment of the facts and a conclusory presentation of illogical arguments. When presented with such inadequate legal arguments, a court should not attempt to assess the legitimacy of the underlying claims, because to do so would be to make a judgment in a case where the appellate representation is wholly inadequate. We find, as the Superior Court did, that appellant's brief is completely lacking in substance and we grant appellant relief because we conclude that appellant was afforded ineffective representation in his PCHA [Post Conviction Hearing Act] appeal.

*Com. v. Albert*, 561 A.2d 736, 738 (Pa. 1989).

I can find nothing in this record to reflect the offense charged of intending to obtain money under false pretenses occurred. Conversion of the money obtained for possible purchase of repair parts arguably could have been charged or, when charged, could have been retained as the charge. But nothing presented in the record suggests Martin, being in the business of repairing pianos, did not intend to repair the piano [19].

---

**18.** The public defender then went to the Wyoming legislature in its 1988 session and secured partial release of the obligation of his office for criminal representation previously provided by the statute by passage of the 1988 Wyo.Sess. Laws, ch. 46 enactment of a substitute section for W.S. 7–14–104. The effective effort was to reverse *Fondren*, 749 P.2d 767; *Alberts*, 745 P.2d 898; and *Long*, 745 P.2d 547.

**19.** *See* Annotation, *Modern Status of Rule that Crime of False Pretenses Cannot be Predicated Upon Present Intention Not to Comply with Promise or Statement as the Future Act*, 19 A.L. R.4th 959 (1983).

It is not difficult to address what should be provided by an *Anders* brief. A good faith reading of *Anders*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493; *McCoy v. Court of Appeals of Wisconsin, Dist. 1*, 486 U.S. 429, 108 S.Ct. 1895, 100 L.Ed.2d 440 (1988); and *Penson v. Ohio*, —— U.S. ——, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988) makes clear the constitutional criteria laid out by the United States Supreme Court. In this case, we hardly· have the bare conclusion proscribed in *Anders*, 386 U.S. at 742–43, 87 S.Ct. at 1399–1400: "Such a procedure, this Court said, 'cannot be an adequate substitute for the right to full appellate review available to all defendants' who may not be able to afford such an expense." We certainly are not presented, by Martin, the schizophrenic brief characterized in *McCoy*, 108 S.Ct. at 1898–1902 (footnotes omitted and emphásis added):

> Appellant's counsel then prepared a brief that can fairly be characterized as schizophrenic. In his role as an advocate for appellant, counsel stated the facts, advanced four arguments for reversal, and prayed that the conviction be set aside. In his role as an officer of the court, counsel stated that further appellate proceedings on behalf of his client "would be frivolous and without any arguable merit," App. 14, and prayed that he be permitted to withdraw, *id.*, at 27. Thus, in the same documents, the lawyer purported to maintain that there were arguments warranting a reversal and also that those arguments were wholly without merit. The brief did not contain an explanation of the reasons for counsel's conclusion. * * *
> \* \* \* \* \* \*

The principle of substantial equality does, however, require that appointed counsel make the same diligent and thorough evaluation of the case as a retained lawyer before concluding that an appeal is frivolous. Every advocate has essentially the same professional responsibility whether he or she accepted a retainer from a paying client or an appointment from a court. *The appellate lawyer must master the trial record, thoroughly research the law, and exercise judg-*

*ment in identifying the arguments that may be advanced on appeal.* In preparing and evaluating the case, and in advising the client as to the prospects for success, *counsel must consistently serve the client's interest to the best of his or her ability.* Only after such an evaluation has led counsel to the conclusion that the appeal is "wholly frivolous" is counsel justified in making a motion to withdraw. This is the central teaching of *Anders*.

The requirement of an *Anders* brief was further considered by Justice Stevens in *Penson*, 109 S.Ct. 346. What was done in the *Penson* "brief" is markedly similar to what was done in *Anders*. That court said:

> The so-called *"Anders* brief" serves the valuable purpose of assisting the court in determining both that counsel in fact conducted the required detailed review of the case and that the appeal is indeed so frivolous that it may be decided without an adversary presentation. * * * Counsel's failure to file such a brief left the Ohio court without an adequate basis for determining that he had performed his duty carefully to search the case for arguable error and also deprived the court of the assistance of an advocate in its own review of the cold record on appeal.

*Penson*, 109 S.Ct. at 350–51 (footnote omitted).

Discussion of *Anders* briefs by state and federal courts is legion. The public defender would not be sorely disadvantaged by reading *Forrester v. State*, 542 So.2d 1358, 1361 (Fla.App.1989) (emphasis in original and added).

> *[T]he brief* at the very minimum *should draw attention to anything in the record that might arguably* support the appeal in order to *assist the court in determining whether counsel conducted the required detailed review of the case,* and whether the appeal is so frivolous that the case may be disposed of without the assistance of counsel. * * *

Finally, a brief that fails to make any reasonable argument in support of the

designated judicial acts, but which otherwise abides by *Anders*, as above stated, *must* contain a representation in the brief that *appellate counsel has discussed the designated acts* with trial counsel and has also *communicated with the defendant*, together with the statement that trial counsel agrees that the designations present wholly frivolous issues. If appellate counsel is unable to acquire the concurrence of trial counsel in such conclusion, then he or she must include as well a satisfactory explanation of why such concurrence could not be obtained.

The Florida court argues the first professional obligation owed a client is proper communication with the client and appellate counsel. The Florida court would certainly be at odds with the assertions made by the public defender in this case at oral argument but would readily agree with Martin's pro se brief.

It may be difficult in Wyoming to heed the Florida court that the client's interest is not subservient to amiable relations between trial and appellate counsel because of our unavoidable institutional identity. Appellate briefing is prepared by the director of the office of the public defender; that same office sees to defense representation at trial level.

The public defender relies on *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539, 546 (1987) to highlight the current tide of constitutional construction by the United States Supreme Court which denies and disparages, because unenumerated, any federal constitutional right to counsel in post-conviction relief; *Finley* goes even further to suggest, in dicta, there is no federal right to any appeal whatsoever.[20] *See also Murray v. Giarratano*, —— U.S. ——, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989). The issue presented is not a *Finley* scenario. Here, counsel has been provided in name only because the public defender did little but lament his woes in being appointed as counsel.

The public defender claimed in his brief:

It would appear to counsel in this case that *Anders v. California, supra,* was complied with but that *Anders* is only applicable to direct appeals, not post-conviction matters and that duty, procedurally as well as ethically was made in the handling of the instant case as outlined by the United States Supreme Court in *McCoy.*

That claim makes no sense since *McCoy* requires a basic compliance with *Anders.* Any reading of the record could reveal the questions raised by Martin during the period he was confined, from the time he was charged to after the time of his sentencing. He questioned the justice of his bail set so high it was unattainable. He questioned why he had not been told he had the right to appeal. He questioned how it was proper to wring a nolo contendere plea from him by institutional indifference to his heart condition. He questioned why he was denied a speedy trial in violation of Rule 204. He continually denied his guilt and argued no crime had occurred. Not one of these issues were addressed in good faith by the public defender. Yet the majority summarily disposes of Martin's issues on the basis of waiver by plea, a kind of judicial black hole which crushes to its breast everything within its gravitational reach.

A threshold obstacle to this summary disposal is that the public defender made no effort to brief the issues, even if he argued for disposition by waiver. Leaving behind the lack of briefing, it is apparent the factual situation presents several difficult areas of inquiry yet to be briefed and addressed.

The first inquiry is whether the district court, even as a matter of discretion, should have accepted the nolo contendere plea given the severity of Martin's medical condition and his continued professing of innocence. The second inquiry relates to the kind of information an accused should be furnished about the offense charged since Martin denied his guilt but was not clearly informed that proof of "intent" was

---

**20.** *Cf.* U.S. Const. amend. IX; Wyo. Const. art. 1, § 36.

needed to convict him. Intent is, of course, indispensable. *Miller v. State,* 732 P.2d 1054 (Wyo.1987); *State v. Kraft,* 413 N.W.2d 303 (N.D.1987). A third inquiry is where, within W.R.Cr.P. 15, is the principle of waiver under a nolo contendere plea located if a finding of guilt is not required? Tangent to the waiver question is the principle that jurisdiction is not waived and if a crime did not exist, the plea cannot constitute a waiver. *See Williams v. State,* 516 So.2d 975 (Fla.App.1987) and *Patton v. State,* 517 N.E.2d 374 (Ind.1987). Finally, related inquiry is required into the nature of the charged offense as it involves the admitted, recognized and unquestioned facts in this case of a piano repairman who received advanced payments for repair and had not completed the contractually agreed services.

From an early stage of his imprisonment, Martin questioned his denial of a speedy trial against Rule 204. It is not my province in this dissent, where the public defender was not even inclined to provide representation and review for his client, to address what this court faced in *Phillips,* 774 P.2d 118; *Harvey,* 774 P.2d 87; and *DeSpain,* 774 P.2d 77. May it suffice for the purpose of a proper *Anders* brief that the public defender had a responsibility to, at least, discuss the issue and advise why the speedy trial requirements of Rule 204 should not be applied. *Cf. DeSpain,* 774 P.2d 77. *See also Phillips,* 774 P.2d 118 and *Harvey,* 774 P.2d 87. In the absence of that discussion, the public defender failed in his responsibility to address the district court for consideration of post-conviction relief or to represent his client in the appellate proceedings. *See Penson,* 109 S.Ct. 346.

We are also faced with the need for a standard to evaluate district court acceptance of a nolo contendere plea, not just when the accused refuses to admit guilt for the purposes of potential civil liability or otherwise, but when a "borderline retarded" accused consistently professes innocence. In a due process context, we are called to consider the repellent attributes of a nolo contendere plea as if it were an admission of guilt and then to fence in claimed remedies by application of *Mabry v. Johnson,* 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984); *Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); and *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). I am not willing to concede a nolo contendere plea, when accompanied by a continued recitation of innocence, necessarily encumbers the defendant to the same preclusion which results from a guilty plea. *Cf. Patton,* 517 N.E.2d at 374.

Even without correcting for due process, the majority's broadly stated rule of preclusion has clear exceptions such that a nolo plea will not necessarily preclude reexamination. *People v. Komatsu,* 212 Cal. App.3d Supp. 1, 261 Cal.Rptr. 681 (1989).

It is apparent from a review of the cases that broad exceptions exist. First, the rule of preclusion by plea relates to issues predating the entry of the plea and not to the entry of the plea itself. *See Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), which distinguishes *Tollett,* 411 U.S. 258, 93 S.Ct. 1602; and the guilty plea trilogy; *Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970); *McMann,* 397 U.S. 759, 90 S.Ct. 1441; and *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), where the guilty plea is characterized as a break in the chain of events which has proceeded it in the criminal process. Consequently, events involved in the voluntariness or propriety of the plea itself are not foreclosed from examination.

Second, the question of jurisdiction is not precluded. Intrinsic to this exception is the very power of the state to bring the defendant into court to answer the charge brought against him. Double jeopardy cases, for example, have encountered some vicissitudes under this inquiry. See most recently, *United States v. Broce,* —— U.S. ——, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989). Compare *Menna v. New York,* 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) and *Blackledge,* 417 U.S. 21, 94 S.Ct. 2098.

Another exception is where a crime itself did not occur. *Williams,* 516 So.2d 975. A

consistent rule is applied that waiver by plea cannot be applied if there was no actual crime for the entry of a proper guilty plea since entry of the plea only admits facts well-pleaded. *Lott v. United States*, 367 U.S. 421, 81 S.Ct. 1563, 6 L.Ed.2d 940 (1961); *United Broth. of Carpenters and Joiners of America v. United States*, 330 U.S. 395, 67 S.Ct. 775, 91 L.Ed. 973 (1947); *United States v. Heller*, 579 F.2d 990 (6th Cir.1978); *Zebelman v. United States*, 339 F.2d 484 (10th Cir.1964); *Melrose Distillers, Inc. v. United States*, 258 F.2d 726 (4th Cir.), *cert. granted* 358 U.S. 878, 79 S.Ct. 125, 3 L.Ed.2d 109 (1958), *judgment aff'd* 359 U.S. 271, 79 S.Ct. 763, 3 L.Ed.2d 800 (1959); *Crolich v. United States*, 196 F.2d 879 (5th Cir.), *cert. denied* 344 U.S. 830, 73 S.Ct. 36, 97 L.Ed. 646 (1952). The rule is stated by Wright, Federal Practice & Procedure: Criminal 2d § 177 at 664–65 (1982) (footnote omitted):

> The plea [nolo contendere] is like a guilty plea in that the sufficiency of the indictment or information or other defects going to the power of the government to bring the defendant into court to answer the charge can still be challenged, but that nonjurisdictional defects in the proceeding are waived.

The principle of non-waiver of jurisdiction is apposite to the broad language of *State v. Steele*, 620 P.2d 1026 (Wyo.1980). Although that case is directed to admission of commission of the offense by nolo contendere, I would not consider its text to establish the unchallenged status of a total non-existence of offense. "The court may accept it [nolo contendere] without first satisfying itself that the defendant committed the crime charged as it must do on a plea of guilty." [21] *Id.* at 1028.

After the initial complaint of larceny by bailee of the piano, followed by larceny by bailee for the advance payments for repair costs, the third complaint to that series, as identically stated in the information, was "did knowingly obtain property, to-wit: one thousand two hundred and forty seven dollars and five cents, ($1,247.05), in cash from other people, to-wit: Rex and Judy Condos, by false pretenses, with intent to defraud the Condos, in violation of Section 6–3–407(a)(i) W.S.1977, as amended 1985."

The affidavit attached to the criminal complaint revealed that "[t]he price of $1,200 was agreed upon and was paid in advance on three separate dates in Lyman, Uinta County, Wyoming 8–2–85, check # 735 for $500.00; 8–15–85, check # 745 for $402.46; and 9–16–85, check # 764 for $345.59, to Donald Raymond Martin by Judy Condos." [22]

There is nothing in the initial complaint, affidavit or other documentary submission or allegation which claimed Martin did not intend to repair the piano. To the contrary, letters were mailed as recited in affidavit for warrant which gave Martin's excuses for delay.

The district court said:

> The Court finds that there is a factual basis for the Court's side of this case. That it was not a frivolous charge[,] it was not a case that was filed without substantiation, that there's a factual basis for the Court's point of view—or for the State's point of view that Mr. Martin deceived Mr. and Mrs. Condos into not only giving him a piano, but deceived them into giving him money so that he could later skip out on them, which he, in fact, did. And that there is a factual basis for the Court—for the State and the Condoses believing that that's what

**21.** Under W.R.Cr.P. 15 and the constitutional requirements of our state and federal constitutions, I do not necessarily concede an effect to nolo contendere that affords less protection to the defendant than would be the case if an explicit plea of guilty is entered. However, that issue need not be addressed here since at issue is whether there is an offense, not whether defendant committed an offense as charged. If there was a criminal offense committed involving the piano and anticipated repairs, Martin

certainly did it. The entire case was postured in the perception of Martin that a crime never occurred. In the face of the constitutional prohibition in Wyo. Const. art. 1, § 5, imprisonment for debt, the formulation of a criminal offense can only be founded upon a fraudulent act interdiction.

**22.** The checks, numbered as 735, 745 and 764, equal $1,248.05 instead of $1,247.05.

Mr. Martin did, Mr. Martin's protestation to the contrary, notwithstanding.

The Court, therefore, will accept the plea of nolo contendere.

The district court did not find, and nothing in the statements made at plea indicated, Martin did not intend to repair the player piano. The statute, W.S. 6–3–407, obtaining property by false pretenses, provides in part: "(a) A person who knowingly obtains property from another person *by false pretenses with intent to defraud* * * *." (Emphasis added.) *Cf. Martins v. State*, 17 Wyo. 319, 98 P. 709 (1908). *See also Anderson v. State*, 27 Wyo. 345, 196 P. 1047 (1921). Missing from this scenario is evidence of intent to defraud which can only be construed from a developed plan not to provide the services which were the subject of the contract. This indispensable element of the offense is missing. This case presents the same issue as *Miller*, 732 P.2d 1054,[23] where we discussed the false pretense statute in detail, finding the requisite intent to defraud was missing and the conviction was reversed. "The final and dispositive criminal-conviction requirement is intent to defraud. This factor uniformly required in the Wyoming cases, is discussed in a myriad of cases in other jurisdictions." *Id.* at 1063.

Fundamental in any proceeding finding criminal liability is the idea that one accused of a crime must have possessed a guilty mind as well as performed the proscribed act. * * * While modern statutory law has, to a limited degree, modified the traditional rule requiring a specific intent for every proscribed act

* * *, it remains an essential element of the crime of theft * * *.

*Kraft*, 413 N.W.2d at 306. In that case, an obvious error (plain error) reversal was required when the failure to give an intent instruction at trial had occurred.

In *Haines v. Territory*, 3 Wyo. 167, 179, 13 P. 8 (1887), the criminal elements listed were "intent to defraud; actual fraud must be committed; false pretenses must be used for the perpetration of the fraud; false pretenses must be the cause which induced the owner to part with his property." It was also clear in *Driver v. State*, 589 P.2d 391 (Wyo.1979) the extension of the Wyoming law making criminal a misrepresentation of existing or past facts was not adopted to future acts. *Miller*, 732 P.2d 1054 followed the same thesis since intent to defraud could not be construed from subsequent non-payment. This was considered in *People v. Rolston*, 113 Ill. App.3d 727, 70 Ill.Dec. 87, 90, 448 N.E.2d 965, 968 (1983) that "failure to fulfill a contract is not proof of a specific intent to defraud." *See also Fitzgerald v. State*, 599 P.2d 572 (Wyo.1979), where the finding of fraudulent intent was not premised upon an intent not to deliver merchandise. Indeed, it was premised upon false pretenses found in the "advertisement." *See also Anderson*, 196 P. 1047 and *Martins*, 98 P. 709. *Cf.* Annotation, *Modern Statutes of Rule that Crime of False Pretenses Cannot be Predicated upon Present Intention Not to Comply With Promise or Statement as to Future Act*, 19 A.L.R.4th 959 (1983).[24]

---

**23.** *See* n. 16, *supra.*

**24.** I am aware of the incongruity of this case where the nolo contendere plea is accepted by the court because the requisite criminal intent can be construed from the delayed delivery, but in the absence of that plea, proof of the offense could never be made. The problem involved is whether the allegation of the statute itself can create a crime even where there is no factual basis upon which the statute can be located to define the proscribed criminal conduct. The obvious answer is if the counseled plea created a crime that did not otherwise exist, then ineffectiveness of trial counsel might be authenticated as a posture for the purpose of this appeal which I am not particularly inclined to pursue.

Obviously, there is always a problem when the defendant credibly proclaims his innocence in proposing a plea bargain unless the terms are singularly better than might be expected with a guilty plea. This case is exasperated in context because of the difficulty that prosecution would have had to ever define a crime. The only real issue advanced within the bits and pieces of events which are related in file documents of variant kinds is whether or not Martin had ever ordered parts for the piano. The explicit dispute regarding the character of Martin's army discharge as related to the pre-sentence investigation report and at least an apparent, if not obvious, error of the parole officer does not come to an issue presently circumscribed for review in this appeal.

I see no need to whitewash the behavior of the public defender by recharacterizing that behavior. If the public defender had taken every issue discussed in this dissent, and after a good faith analysis came to a conclusion contrary to that of his client, there would at least have been a proper *Anders* brief presented to this court.

Now released on parole, Donald R. Martin will not be mesmerized by the result of this holding unless he violates the condition of his parole, but our reaction or lack of reaction, as a high court, to his lack of representative counsel is significant beyond the concerns of immediate participants. The behavior we condone from attorneys is the behavior the public receives. I would reverse.